957 So.2d 638 (2006)
Sue M. COBB, in her official capacity as Secretary of State, State of Florida, and Joseph Negron, Intervenor, Appellants,
v.
Karen THURMAN, as Chairman of the Florida Democratic Party; the Florida Democratic Party; Arthur Anderson, in his official capacity as Supervisor of Elections of Palm Beach County; Vicki Davis, in her official capacity as Supervisor of Elections of Martin County; Gertrude Walker, in her official capacity as Supervisor of Elections of St. Lucie County; Gwen Chandler, in her official capacity as Supervisor of Elections of Okeechobee County; Joe Campbell, in his official capacity as Supervisor of Elections of Highlands County; Holly Whiddon, in her official capacity as Supervisor of Elections of Glades County; Lucretia A. Strickland, in her official capacity as Supervisor of Elections of Hendry County; and Mac V. Horton, in his official capacity as Supervisor of Elections of Charlotte County, Appellees.
No. 1D06-5447.
District Court of Appeal of Florida, First District.
October 27, 2006.
*639 Peter Antonacci, Andy V. Bardos, and Allen C. Winsor of Gray Robinson, PA, Tallahassee, for Appellant Sue M. Cobb; Robert H. Fernandez, Bill L. Bryant, Jr., and Mia L. McKown of Akerman Senterfitt, Miami, for Intervenor Joseph Negron.
Mark Herron and Robert J. Telfer III of Messer, Caparello & Self, P.A., Tallahassee, Stephen F. Rosenthal, Miami, David M. Buckner, Miami, Richard B. Rosenthal of Law Offices of Richard B. Rosenthal, P.A., Miami, and Charles H. Lichtman of Berger Singerman, Ft. Lauderdale, for Appellees Karen Thurman and Florida Democratic Party; Ronald A. Labasky of Young Van Assenderp, P.A., Tallahassee, for Appellees Arthur Anderson, Vicki Davis, Gwen Chandler, Joe Campbell, Lucretia A. Strickland, and Mac V. Horton; no appearance for Appellees Gertrude Walker and Holly Whiddon.
WOLF, J.
This is an appeal from a final judgment issued by the circuit court granting injunctive relief to the appellees, including Karen Thurman, as Chairman of the Florida Democratic Party, and the Florida Democratic Party (collectively Florida Democratic Party).
The issue presented in this case is whether election officials may provide written notice to voters that a vote cast for a withdrawn candidate whose name appears on the ballot will be counted as a vote for a replacement candidate whose name does not appear on the ballot. The trial court issued an order granting a temporary injunction preventing the publication of such notice. We find that the statutory scheme supports the interpretation of the Secretary of State that an easily understandable, facially neutral and concisely stated notice of fact may be provided to the voters to ensure an informed electorate. We also determine that there is no statute that prohibits such limited explanatory material as long as it meets the impartiality requirements set out in sections 101.031(4) and 102.031(4)(a), Florida *640 Statutes (2006).[1]
In applying these standards, we determine that the email notice provided by the Secretary of State on October 3, 2006, failed to meet the impartiality requirements and, therefore, affirm the trial court's order precluding posting of, or delivery to, voters of said notice within the polling places of the relevant Congressional district. We determine, however, that the notice provided by the general counsel for the Florida State Association of Supervisors of Elections on October 11, 2006, complies with the statutory framework and, thus, may be used as information sheets at the polling places. As to this notice, we reverse the trial court's order granting the injunction.
The facts in this case are undisputed. On September 29, 2006, U.S. Congressman Mark Foley (Foley), who represented Florida's 16th Congressional District, resigned his office and withdrew as a candidate for reelection. Foley had been the nominee for the Republican Party for this Congressional seat. Due to Foley's withdrawal, the Republican Party of Florida was left with a vacancy on its slate. On October 2, 2006, the Republican State Executive Committee designated State Representative Joseph Negron (Negron) as its new nominee for this seat.
However, because Foley's withdrawal came after the State of Florida had certified the results of the 2006 primary election, pursuant to section 100.111(4)(a), Florida Statutes, it is Foley's name, and not Negron's, which will appear on the general election ballot. That statute requires: "[i]f the name of the new nominee is submitted after the certification of results of the preceding primary election, . . . the ballots shall not be changed and the former party nominee's name will appear on the ballot." The statute further states, "Any ballots cast for the former party nominee will be counted for the person designated by the political party to replace the former party nominee." Thus, in order to cast a vote for Negron, whose name appears nowhere on the ballot, a voter must actually select Foley's name, despite his withdrawal from the election. The ballot itself does not contain any reference to this substitution of candidates, or to the statute explaining this mandated transfer of votes.
On October 3, 2006, the Secretary of State's office sent an email to each supervisor of elections in the Congressional district recommending that the "notice language" be posted at all early voting sites and polling places to advise that any vote cast for Foley would be counted as a vote for Negron. This notice made no mention of the other two candidates on the ballot.
In addition, on October 11, 2006, the general counsel for the Florida State Association of Supervisors of Elections, issued a memorandum to the supervisors in Congressional District 16, recommending that they place an "information sheet" at polling places in this form:
IN THE CONGRESSIONAL DISTRICT 16 RACE
 A VOTE FOR MARK FOLEY (REP) WILL BE COUNTED FOR JOE NEGRON (REP), THE REPUBLICAN CANDIDATE.
 A VOTE FOR TIM MAHONEY (DEM) WILL BE COUNTED FOR TIM MAHONEY (DEM), THE DEMOCRATIC CANDIDATE.
 A VOTE FOR EMMIE ROSS (NPA) WILL BE COUNTED FOR EMMIE ROSS (NPA), THE NO PARTY AFFILIATION CANDIDATE.
*641 Six of eight supervisors of elections in the affected Congressional district indicated that they would post such information at the polling places.
The Florida Democratic Party filed a complaint for emergency declaratory and injunctive relief arguing that it is not the role of the Secretary or the supervisors to present information to the electors at the polling place about the substitution of candidates on the ballot. Section 101.5611(1), Florida Statutes, "Instructions to electors," states that the supervisors "shall provide instruction at each polling place regarding the manner of voting with the system. In instructing voters, no precinct official may favor any political party, candidate, or issue." The Florida Democratic Party argued that advising voters concerning the substitution of one party's candidate constitutes a partisan action favoring that party and that any document that effectively stated a vote for Foley was a vote for Negron served the purpose of soliciting a vote for Negron in violation of section 102.031(4)(a), Florida Statutes, which prohibits solicitation of voters inside the polling place or within 100 feet of the entrance to any polling place or early voting site.
The Secretary argued that Florida's Election Code allows supervisors to provide clear, concise, facially neutral and legally accurate information to the public to enable voters to cast informed ballots and further allows authorized election officials to provide voters with material information concerning elections. The Secretary is the chief election officer of the state and is authorized to provide voter assistance to the public and to provide technical assistance to the supervisors on voter education. § 97.012, Fla. Stat. The Department of State is authorized to provide informational cards containing "information about how to vote and such other information as the Department of State may deem necessary" to the supervisors for the voters' use. § 101.031(1), Fla. Stat.
Six of the eight supervisors appeared in circuit court and argued that section 101.5611(1), Florida Statutes, authorizes the supervisors to "provide instruction at each polling place regarding the manner of voting with the system." In addition, the Voter's Bill of Rights provides that voters have the right to ask for and receive assistance in voting and to receive written instruction to use when voting, and, upon request, oral instruction in voting from election officers. § 101.031(2), Fla. Stat. Relying on these sections, the six supervisors determined that the information sheet would be the best way to supply information to the voters regarding the substitute candidate.
After conducting a hearing, the trial court issued a final judgment granting injunctive relief and ordered the supervisors not to post the proposed notice or deliver the notice to individual voters posing questions about the race in question. The trial court found that section 100.111(4), Florida Statutes, controlled the result because it deals specifically with the issue raised. The trial court noted that in section 100.111(4), the Florida Legislature did not mandate the posting or delivering of notices at polling places informing electors of the replacement as has been done by the Kentucky Legislature. Ky.Rev.Stat. Ann. § 118.227(3) (2006). The Kentucky statute states that if a replacement for a vacant candidate is made after the ballots are printed for the primary election, notices informing the voters of the change in the composition of the slate shall be posted at each precinct polling place. Instead, the Florida Legislature specifically directed that "the ballots shall not be changed and the former party nominee's name will appear on the ballot." § 100.111(4)(a), Fla. *642 Stat. Although section 100.111(4) does not preclude the posting of notices, it specifically requires that the person no longer seeking the office appear on the ballot. While finding various statutes authorize the Secretary of State to provide voter education assistance to the public and authorize the supervisors to provide instruction at each polling place regarding "the manner of voting with the system," the trial court found that the statutes did not provide the authority to post notices regarding a particular race. The trial court found the phrase "manner of voting with the system" in section 101.5611(1), Florida Statutes, cannot not be interpreted to mean that the supervisors were authorized to provide guidance as to the "manner of voting" in a particular race. Further, the trial court found section 101.62(6), Florida Statutes, precludes the mailing of the proposed notices with the absentee ballots, due to that section's direction that "[n]othing other than the materials necessary to vote absentee shall be mailed or delivered with any absentee ballot."[2] The trial court found that to interpret the election statutes as permitting the proposed intrusion into the polling place, no matter how well-intentioned, was an extrapolation beyond the Legislature's words and called into question the logical boundaries of efforts to "inform" voters.
The trial court, however, recognized that "the proposed notice is truthful, and does not misstate anything about the Congressional District 16 race." The trial court even acknowledged that "confusion [was] likely to result where voters know that the person reflected on the ballot is no longer seeking the position," and that the proposed "notices might clarify" that a vote cast for the withdrawn candidate will be counted as a vote for the substituted candidate.
Whether the election laws permit the posting of the challenged notices is a question of law; therefore, review on appeal is subject to the de novo standard of review. See State v. Otte, 887 So.2d 1186, 1188 (Fla.2004); State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001) (stating that "[i]f the ruling consists of a pure question of law, the ruling is subject to de novo review"). "The conduct of elections, including the specifications of ballots, is controlled by statute." Nikolits v. Nicosia, 682 So.2d 663, 664 (Fla. 4th DCA 1996).
We apply these concepts to two questions. First, does the Secretary of State or supervisors of elections have authority to provide notice concerning the effect of casting a ballot for Foley? Second, if said authority exists, is there anything in the statutes which precludes the giving of the notices proposed by the Secretary of State or the supervisors of elections?
The statutory framework of Florida's Election Code attempts to balance at least two fundamental rights: the right of an elector to cast an informed vote, and the right of the people to have a fair and impartial election process.
Recognizing the unique nature of the election process, Florida courts have traditionally shown deference to the judgment of election officials:
The election process is subject to legislative prescription and constitutional command and is committed to the executive branch of government through duly designated officials all charged with specific duties. . . . [The] judgments [of those officials] are entitled to be regarded by *643 the courts as presumptively correct and if rational and not clearly outside legal requirements should be upheld rather than substituted by the impression a particular judge or panel of judges might deem more appropriate.
Krivanek v. Take Back Tampa Political Comm., 625 So.2d 840, 845 (Fla.1993) (quoting Boardman v. Esteva, 323 So.2d 259 (Fla.1975), cert. denied, 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791 (1976)) (according latitude to the judgment of election officials in the "process of validating signature petitions") (ellipsis and alterations in original); accord Floridians Against Expanded Gambling v. Floridians for a Level Playing Field, 31 Fla. L. Weekly D2078 n. 3, 2006 WL 2251785 (Fla. 1st DCA Aug.8, 2006) ("Krivanek stands for the proposition that election officials are accorded deference in interpreting election laws and performing their duties.").
The pertinent statutes relating to the responsibilities of election officials to provide voter information are sections 97.012, 101.031(1), 101.031(2), and 101.5611(1), Florida Statutes, which state:
97.012 Secretary of State as chief election officer.
The Secretary of State is the chief election officer of this state, and it is his or her responsibility to:
. . . .
(4) Provide technical assistance to the supervisors of elections on voter education and election personnel training services.
. . . .
(6) Provide voter education assistance to the public.
. . . .
101.031 Instructions for electors.
(1) The Department of State, or in case of municipal elections the governing body of the municipality, shall print, in large type on cards, instructions for the electors to use in voting. It shall provide not less than two cards for each voting precinct for each election and furnish such cards to each supervisor upon requisition. Each supervisor of elections shall send a sufficient number of these cards to the precincts prior to an election. The election inspectors shall display the cards in the polling places as information for electors. The cards shall contain information about how to vote and such other information as the Department of State may deem necessary. The cards must also include the list of rights and responsibilities afforded to Florida voters, as described in subsection (2).
(2) The supervisor of elections in each county shall have posted at each polling place in the county the Voter's Bill of Rights and Responsibilities in the following form:
VOTER'S BILL OF RIGHTS
. . . .
7. Written instructions to use when voting, and, upon request, oral instructions in voting from elections officers.
. . . .
VOTER RESPONSIBILITIES
. . . .
9. Ask questions, if needed.
. . . .
101.5611 Instructions to electors.
(1) The supervisor of elections shall provide instruction at each polling place regarding the manner of voting with the system. In instructing voters, no precinct official may favor any political party, candidate, or issue. Such instruction shall show the arrangement of candidates and questions to be voted on. Additionally, *644 the supervisor of elections shall provide instruction on the proper method of casting a ballot for the specific voting system utilized in that jurisdiction. Such instruction shall be provided at a place which voters must pass to reach the official voting booth.
(Emphasis added).
In interpreting the Florida Election Code, it is necessary to read the entire election code in pari materia. Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1273, 1287-88 (Fla.2000). Reading all of the cited statutory sections evidences a legislative intent that there be an informed electorate that will know how to cast an effective vote.[3]
The Florida Supreme Court has directed that election laws must be construed consistently with the important constitutional right of voters to cast their votes effectively. Krivanek, 625 So.2d 840, 844 (Fla. 1993) ("[E]lection laws should generally be liberally construed in favor of an elector."); State ex rel. Carpenter v. Barber, 144 Fla. 159, 198 So. 49 (1940) ("It is the intention of the law to obtain an honest expression of the will or desire of the voter."). The right of voters to cast their votes effectively has long been "rank[ed] among our most precious freedoms." Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). As the U.S. Supreme Court explained:
No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.
Id. at 31, 89 S.Ct. 5.
The circumstances in the instant case are a classic example of when voter information will be essential to ensuring an effective vote.
Foley's name will appear on the ballot but will be a placeholder for Negron's, creating a complexity in voting that must be made known to voters to enable them to cast an informed and intelligent ballot. Without some explanation, a ballot that omits the name of the legal candidate leads to doubt and uncertainty about the true will of the people. In light of the ample powers vested in election officials to educate, inform, and instruct voters, it is unreasonable to assume that Florida law mandates that voters be kept in the dark about these circumstances while the identity of the actual, lawful candidate is concealed from view. Confused voters should not be required to guess as to how their vote will be counted, or be forced to question poll workers and rely on the potentially inconsistent, incomplete, or partial information provided by the poll workers. Under these circumstances, the posting of a clear, concise notice informing voters *645 that a vote for the withdrawn candidate, whose name appears on the ballot, will be counted for the legal candidate, whose name is not on the ballot, is essential to the voters' casting an effective vote.[4]
We also find nothing in the statutes that would preclude the giving of notice as long as the notice complies with the impartiality requirements of sections 101.031(4) and 102.031(4)(a), Florida Statutes.
The trial court held that the following language of section 100.111(4)(a), Florida Statutes, prohibits the proposed notice:
[T]he ballots shall not be changed and the former party nominee's name will appear on the ballot.
The court reasoned that:
This provision . . . refutes the Defendants' argument that Section 100.111(4) is "silent" on the issue of what should be done. Although Section 100.111(4) does not specifically preclude the posting of notices, it does specifically require that the person no longer seeking the office appear on the ballot. The Legislature has therefore acknowledged the issue of whose name should appear when another candidate has been nominated, but, for whatever reason, decided to require that the former candidate's name appear on the ballot.
The trial court confused two distinct concepts: the form of the ballot and the provision of information to the electorate. The quoted language refers only to "ballots" a term defined in section 97.021, Florida Statutesnot notices. Appellants do not contend that the ballot should be amended in any manner. The only question is whether election officials may post a noticedistinct from the ballotinforming voters that a vote cast for the withdrawn candidate will be counted for the substituted candidate. The quoted language simply does not address this issue.
We are unwilling to reject the election official's interpretation of the statutory scheme where that reasonable interpretation allows voters to cast informed votes solely because section 100.11(4), Florida Statutes, fails to expressly discuss the issuance of notices.
The trial court, however, correctly expressed concern about the creation of a "slippery slope" when allowing intrusion into the polling place in an effort to inform voters. We share the trial court's concern and its unspoken fear of bias or partisanship entering into the polling place. It is, thus, important for the courts to balance the desire for an informed electorate with strict enforcement of impartiality mandated by the Legislature in sections 101.031(4) and 102.031(4)(a), Florida Statutes. These subsections read:
101.031 Instructions for electors.
. . . .
(4) In case any elector, after entering the voting booth, shall ask for further instructions concerning the manner of voting, two election officers who are not both members of the same political party, if present, or, if not, two election officers who are members of the same political party, shall give such instructions *646 to such elector, but no officer or person assisting an elector shall in any manner request, suggest, or seek to persuade or induce any elector to vote for or against any particular ticket, candidate, amendment, question, or proposition. After giving the elector instructions and before the elector has voted, the officers or persons assisting the elector shall retire, and such elector shall vote in secret.
. . . .
102.031 Maintenance of good order at polls; authorities; persons allowed in polling rooms and early voting areas; unlawful solicitation of voters.
. . . .
(4)(a) No person, political committee, committee of continuous existence, or other group or organization may solicit voters inside the polling place or within 100 feet of the entrance to any polling place, or polling room where the polling place is also a polling room, or early voting site. Before the opening of the polling place or early voting site, the clerk or supervisor shall designate the no-solicitation zone and mark the boundaries.
In enforcing these provisions, we go farther than the trial court. The trial court indicated no bias or impartiality in the notices of either the Secretary of State or the supervisors' attorney. We disagree as to the notice recommended by the Secretary.
We agree that the notice from the Secretary, on its face, shows no partiality toward any candidate or party, nor does it contain words of favoritism, advocacy, or persuasion. Nor do we find any evidence on the record of malicious or wrongful intent on the part of the Secretary of State. We do find, however, that as a result of its structure, the notice proposed by the Secretary may suggest favoritism on behalf of the Republican candidate. The only candidates addressed within the Secretary's notice are Foley and Negron, the former and current Republican candidates. As such, these are the last names a voter will see prior to going into the voting booth. The mention of the Republican candidate to the exclusion of the Democrat or the independent candidates may be considered to be an implied endorsement. We, therefore, determine that the form of notice provided by the Secretary is violative of the neutrality mandated by the statutes. We, therefore, uphold the trial court's injunction as to this notice.
We find, however, that the notice proposed by the supervisors' attorney contains neutral, evenhanded, plain and concise factual information. This notice merely informs the voters of who would be actually receiving their vote when they cast their ballot for any candidate in this Congressional race. The use of such concise and neutral written information may, in fact, avoid having poll workers respond in an unscripted manner and either intentionally or unintentionally providing biased information.[5]
*647 We are mindful of the affidavit of the supervisor of elections in Martin County, which stated:
Based upon my experience as Supervisor of Elections, my concern with respect to voter confusion dealing with the foregoing substitution of a candidate, and my desire to ensure that poll workers do not have to explain or unnecessarily discuss this substitution, I agreed with other Supervisors of Elections in Congressional District 16 to an informational Notice, which will be posted at each polling place in Martin County . . . I believe this will ensure proper instructions to the voters at the polling place, avoid voter confusion, and minimize the responsibilities and problems that may occur for poll workers concerning this race and questions related thereto.
We determine, therefore, that the notice proposed by the supervisors' attorney is authorized by Florida law, and reverse the trial court's injunction as to that particular notice.
Affirmed in part, and Reversed in part.
This court's mandate shall issue forthwith.
KAHN and LEWIS, JJ., concur.
NOTES
[1] All statutory references are to the 2006 edition of Florida Statutes unless herein noted.
[2] Although seven of the eight supervisors felt that section 101.62(6) prevented them from including the proposed notices with the absentee ballots, the Secretary disagreed with that interpretation.
[3] The fact that Kentucky has a statute (section 118.227(3), Kentucky Revised Statutes Annotated (2006)) which specifically requires notice in this particular situation, unlike the Florida Statutes, does not negate Florida's preference for an informed electorate. See Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 228, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) ("Certainly the State has a legitimate interest in fostering an informed electorate."); Anderson v. Celebrezze, 460 U.S. 780, 796, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) ("There can be no question about the legitimacy of the State's interest in fostering informed and educated expressions of the popular will in a general election."). The State has an interest in regulating the election process and avoiding voter confusion. That these, and the other interests asserted, are compelling has been well-established under decided cases. See, e.g., Lubin v. Panish, 415 U.S. 709, 715, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); Am. Party of Texas v. White, 415 U.S. 767, 782 n. 14, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).
[4] Appellee also relies on the repeal of former section 101.253(3), Florida Statutes, repealed Chapter 2005-277, section 77, Laws of Florida, as evidence of the Legislature's intent that notice not be provided. The legislative history surrounding the repealed section, as cited by the Secretary of State, convinces us that this section was repealed because of the difficulties in substituting candidates on touch screen voting machines and does not reflect legislative intent in the case before us. Fla. Dep't of State, Div. of Elections v. Martin, 916 So.2d 763, 765 (Fla.2005); Fla. H.R. State Admin. Council, HB 1567 CS (2005) Staff Analysis 6 (Apr. 21, 2005).
[5] Appellees argue that providing some voters the information at issue and not providing it to others (because early voting has already commenced) would violate the equal protection clause of the United States Constitution; however, the cases cited by appellees are limited to their facts. We decline to extend these holdings. See Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000); Wexler v. Anderson, 452 F.3d 1226 (11th Cir.2006); Jacksonville Coal. for Voter Prot. v. Hood, 351 F.Supp.2d 1326 (M.D.Fla.2004). None of these cases pertain to providing information to voters. We find that providing unbiased factual information to voters in no way implicates equal protection.