ALLEN, Chief Judge.
This is an appeal from a judgment of the Circuit Court in and for Lake County commanding Katherine L. Baker, as supervisor of Registration for Lake County, to execute and deliver to the relator, Roy Caldwell, a certificate showing the said relator to be the Democratic nominee for the office of County Judge for Lake County.
W. Troy Hall, Jr., and W. A. “Bill” Milton, Jr., qualified in the Democratic primary for election to the office of County Judge of Lake County. A certificate of nomination was issued to W. Troy Hall, Jr., after the first primary of May 3, 1960. W. Troy Hall, Jr., withdrew from said nomination since he had also qualified as a candidate for Circuit Judge of the Fifth Judicial Circuit and had received the Democratic nomination for this position.
Immediately thereafter, R. A. Gray, Secretary of State, set the period between May 6, 1960, and noon of May 11, 1960, for all Democratic candidates to qualify for the office of County Judge of Lake County, Florida.
Roy Caldwell, W. A. Milton, Jr., and Fred Reedy qualified as such candidates and at the second regular primary election held on May 24, 1960, Caldwell received 5,384 votes, Milton received 5,050 votes and Fred Reedy received 1,289 votes. No candidate received a majority of the votes cast.
Caldwell requested from the Supervisor of Registration a certificate showing him to be the Democratic nominee for the office of County Judge of Lake County, which was refused by the Supervisor. This resulted in Roy Caldwell bringing a mandamus action against Katherine L. Baker to require the issuance of a certificate to him as the duly elected nominee of the Democratic Party for the office of County Judge of Lake County.
The circuit court, in effect, held, under the present election laws, that since there had been a vacancy in nomination between the first and second regular primaries, that there was no necessity for a special primary to be held to fill the vacancy in nomination and that the Secretary of State was authorized to set a new qualifying date for the filling of such vacancy in nomination during the regular called second primary and that such nomination could be had without a candidate receiving a majority of the votes cast. Since neither of the three candidates received a majority vote, the court issued a peremptory writ, holding that Roy Caldwell was the Democratic nominee and that it was not necessary to hold a special secondary primary.
The circuit judge, in his order, stated that relative positions of the relator and the respondent to be that the respondent contended that it was necessary for a special primary election to be held which could only be called by the Governor; and, even if it be contended that the primary held on May 24, 1960, was a regular election that the relator would not be entitled to a certificate of nomination since he did not receive a majority of the votes cast, and that under such circumstances, it would be the duty of the Governor to call a second primary to determine which of the two high candidates, the relator Roy Caldwell, .or W. A. “Bill” Milton, Jr., should be the 'Democratic nominee for County Judge of Lake County at the general election in November, 1960.
The contention of the relator was that where the vacancy in nomination occurs between the first and second primaries, the duty devolved upon the Secretary of State to designate and set the period for all Democratic candidates to qualify for the vacancy in nomination and that since the relator received a plurality of the votes at *818 the second primary election, he should be designated as the Democratic nominee without the necessity of a run-off election.
The Florida Supreme Court held, In re Advisory Opinion to the Governor, Fla. 1952, 60 So.2d 285, 287, that the Governor had authority to call a special primary election to fill a vacancy in nomination for the office of a Justice of the Supreme Court caused by the death of such nominee, and to fix the date of such primary election. The Court, in its opinion, said:
“It is plainly apparent from the title of the Act and section 9 thereof, that the Legislature intended Chapter 26870 to be a complete revision of the general laws in respect to elections, including general, primary and special elections; and that the portion of Section 102.48, Florida Statutes, 1949, F. S.A., with respect to the power and duty of the State Executive Committee to call a special primary election to fill a vacancy in nomination was eliminated or deleted and is not now a part of the election code of the State.
“You have quoted Section 100.111(2) (c), Florida Statutes, 1951, F.S.A., which is a part of Chapter 26870, Laws of Florida 1951. In respect to the first question posed, this statute is plain and unambiguous and does not admit of any construction different from that conveyed by its clear language. As the statute states, it is your duty to call ‘a special first primary and if necessary seven days later a special second primary’ for the purpose of filling the vacancy in nomination caused by the death of the Honorable Roy H. Chapman, for the office of Justice of the Supreme Court of Florida for a full 6-year term beginning the first Tuesday after the first Monday in January, 1953.
“In answer to your question numbered two, the applicable statute quoted by you imposes upon the Governor the mandatory duty of calling a special first primary election, where a vacancy occurs in nomination for an elective state office later than 30 days before a first primary election and before 40 days prior to the general election. While the statute does not specifically provide, in terms, that the Governor may fix the date on which the special primary election shall be held, it is settled in this jurisdiction that if a statute imposes a duty upon a public officer to accomplish a stated governmental purpose, it also confers by implication every particular power necessary or proper for complete exercise or performance of the duty that is not in violation of law or public policy. See State ex rel. Smith v. Burbridge, 24 Fla. 112, 3 So. 869; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789.
* * * * * *
“We advise you, therefore, in respect to the second question, that inasmuch as the statute makes it your clear mandatory duty to call a first primary election, it also imposes upon you the duty of fixing in your call the date of such first primary election. The date for such primary election should be so fixed as to allow for a second primary within seven days after the first primary, if the same should be necessary in order to determine a nominee; and at all events the first primary election date should be so fixed that the name of the nominee can be known and certified in such sufficient time as to allow it to be placed upon the general election ballots, or upon a separate ballot in the event the general ballots have already been prepared.”
Subsequent to the above opinion by the Supreme Court, the Governor propounded another question to the Justices, In re Opinion to the Governor, Fla.1952, 60 So.2d 321, 324, with reference to the duty or authority of the Governor to call a special primary of the Republican party to also nominate a candidate to the office of Justice of the Supreme Court of Florida. The Supreme Court, in its opinion to the Gov *819 ernor, elaborated on its previous opinion with reference to a special primary to fill a vacancy in nomination, saying:
“Section 97.021, Florida Statutes 1951, F.S.A., contains many definitions pertinent to the inquiry.
“Subsection (1) thereof defines a ‘primary election’ to be an election ‘held preceding the general election, for the purpose of nominating a party nominee to be voted for in the general election to fill a national, state or county office’. As stated in the subsection, ‘The first primary is a nomination or elimination election, the second primary is a nominating election only’; and, as made plain in Section 100.061, Florida Statutes 1951, F.S.A., ‘A first primary election is held on the first Tuesday after the first Monday in May or every year in which a general election is held for nomination of candidates of political parties * * *. A second primary election is held on the fourth Tuesday after the first Monday in May of every year in which a general election is held for the nomination of candidates of political parties for state and county offices for which nominations were not made in first primary election * * */
“A ‘Special primary election’ is quite a different thing. As defined in Section 97.021(3), a ‘Special primary election’ is ‘a special called nomination election designated by the governor, for the purpose of nominating a party nominee to be voted on in a general or special general election.’
******
"Section 99.131 provides for the printing of names of candidates on the general election ballot. After making provision for the nominees of each political party which have been nominated in the primary, it provides that there must be printed on the ballots the names of candidates of political parties ‘nominated or selected to fill vacancies in nomination or vacancies in office in the manner and within the time provided by cha pier 100.’ This Section also provides for blank lines under each office to be balloted on.
******
“Section 100.111, Florida Statutes 1951, F.S.A., is a revision of former Section 102.48, Florida Statutes 1949, and when reference is made to Section 97.021(3), (5), and (6), and Sections 99.061, 99.131, and 101.25, Florida Statutes 1951, F.S.A., this section plainly and unmistakably requires special primaries to fill a ‘vacancy in nomination’ as well as special primaries for the selection of a nominee to fill a ‘vacancy in office.’
******
“Because of the fact that Section 97.021(3) places upon the Governor the duty of calling ‘Special primary elections’ for the purpose ‘of nominating a party nominee to be voted on in a general or special general election’; and because of the requirement of Section 99.131 that there must be printed on the general election ballot the names of candidates of political parties ‘nominated or selected to fill vacancies in nomination * * * in the manner and within the time provided by chapter 100’, it becomes necessary to consider the provisions of Chapter 100 in order to ascertain the manner provided.
“Chapter 100, Florida Statutes 1951, F.S.A., contains section 100.111(2) (c), which reads as follows:
“ ‘When a vacancy occurs later than thirty days before the first primary and before forty days prior to the general election, it shall be subject to a special first primary and if necessary seven days later a special second primary to be called by the governor. Ten days shall be allowed from the time the vacancy occurs in which to specially qualify and the name of the *820 person nominated in the special primary shall be placed on the general election ballot but in event the general election ballots have already been printed then a separate ballot shall be prepared.’
“No section of Chapter 100, other than Section 100.111, deals with the question of calling special primary elections for the purpose of filling vacancies; hence, it must be concluded that Section 100.111 is the only section that can be looked to in order to determine the manner in which special primary elections may be called for the purpose of filling vacancies in nomination.
“It must be freely admitted that if we were allowed to consider Section 100.111 in isolation the conclusion would have to be reached that Section 100.111 is limited to the narrow purpose of authorizing the calling of a special primary election only to fill ‘a vacancy in officeBut when it is considered that Section 99.131 requires nominations of candidates of political parties to fill ‘vacancies in nomination’ to be made in the manner provided by Chapter 100, it must be plain that the Legislature did not intend that Section 100.111 should be applicable only in cases of nominations to fill ‘vacancies in office’, but that that section should be given the same effect in connection with the provisions of Section 99.131 as though written into the latter statute; and that when so construed it should control the manner of filling ‘vacancies in nomination’.”
The circuit judge, in his opinion in the lower court, after quoting certain parts of the opinion in In re Opinion to the Governor, 60 So.2d 321, said:
“Based on the above quotations, and since the statutes cited, with the exception of Section 100.111 Florida Statutes 1951, are either identical or essentially the same at the present time and as applicable to the questions of law involved in this case, it is the contention of counsel for the Respondent that it is the duty of the Governor to call a first and second special primary, the same as the Supreme Court has stated it was his duty to do so in 1952 under the provisions of the 1951 election code, which was in effect at that time.
“This Court would view this argument to be good if there had not in fact been many most material changes in the provisions of Section 100.111 made by the Legislature in 1953, 1955, 1957 and 1959 * * * ”
We have examined each of the Acts referred to by the able Circuit Judge but do not think that the changes made in the 1951 election code would prevent the decision of the Supreme Court made in In re Opinion to the Governor, 60 So.2d 321 from being applicable to the case now before this court.
Chapter 26870 of the Florida Acts of 1951 was an Act creating the election code of 1951. Section 100.111 of this Chapter reads, in part, as follows:
“100.111 Filling vacancy. — Vacancies occurring in national, state or county offices may be filled as follows:
“(1) Appointments By Governor.— When a vacancy occurs in the elective office held by a state or county official, except members of the state senate or state or national house of representatives, the governor may appoint a successor to serve until noon Tuesday after the first Monday in January following the next general election.
“(2) Qualification And Election Of Person To Fill Vacancy In Office Held By A State Or County Official.—
“(a) When a vacancy occurs prior to five days before the regular time for qualifying in the regular primary it shall become subject to nomination in the primary and election at the next general election.
*821 “(b) When a vacancy occurs within five days before the regular time for qualifying or after time for qualifying has closed and before 30 days pri- or to the first primary, it shall become subject to the first primary nomination. Ten days shall be allowed from the time the vacancy occurs in which to ■specially qualify and a separate ballot shall be prepared in event regular primary ballots have already been printed.
“(c) When a vacancy occurs later than 30 days before the first primary ■and before 40 days prior to the general election, it shall be subject to a special first primary and if necessary seven days later a special second primary to be called by the governor. Ten days ■shall be allowed from the time the vacancy occurs in which to specially qualify and the name of the person nominated in the special primary shall be placed on the general election ballot but in event the general election ballots have already been printed then a separate ballot shall be prepared.”
Section 99.131 of Chapter 26870, Acts of 1951, in effect provided for the Board of •County Commissioners to print on the general election ballots the names of candidates nominated by primary elections or special primary elections or put in by appropriate executive committees. It then provided:
“ * * * All committee nominations are made as provided by laws governing primary elections; and further, there are printed on the ballots the names of candidates of political parties nominated or selected to fill vacancies in nomination or vacancies in office in the manner and within the time provided by chapter 100.”
The Florida Supreme Court, in its advisory opinion to the Governor, In re Opinion to the Governor, 60 So.2d 321, stated that construing Section 100.111 and 99.131 together required a holding that the Governor should call primary elections to fill vacancies in nomination as well as vacancies in office by a first primary election and, if necessary, a second primary election.
Section 100.111 of the Florida Statutes, F.S.A. was amended by Chapter 28156, Laws of Florida, 1953, to provide:
“(1) Whenever there is a vacancy in an elective office which may not be filled by appointment, and a special election is called by the governor to fill the vacancy in such office, nominees of recognized political parties under the primary laws of Florida shall be chosen in a special primary which shall be called by the appropriate executive committee of recognized political parties if time permits. If time does not permit or for any other reason it is not practicable to assemble the appropriate executive committee of the recognized political parties to call such primaries but there is time for such primaries to be held, then and in that event the governor may fix the date of a primary election and if necessary a second primary election to select nominees of recognized political parties to become candidates in the special election above referred to.
“(2) The last date on which for candidates to qualify in such special primary election shall be fixed by the secretary of state and candidates shall qualify not later than noon of the day so fixed.
******
“(6) In the event of the death, resignation or removal of any person nominated for office in the primary election between such primary election and the ensuing general election or if for any cause there is a vacancy in any nomination or in any office and no method is otherwise provided herein for filling such vacancy in nomination, then and in that event the state executive committee, in the case of a vacancy in a state office or the county executive committee in the case of a *822 vacancy in a county office, shall call a primary election to provide for a nominee for such office and in case no candidate receives a majority of the votes cast in the primary so called and held, a second primary election shall be held within ten days thereafter; provided, however, that should a vacancy occur in any nomination for county office or in any county office less than thirty days before a general election, or should a vacancy occur in any nomination for a state office or in any state office less than forty-five days prior to a general election, then and in that event, the county executive committee or the state executive committee, depending upon the nature of the office for which a vacancy in nomination shall have occurred, shall fill such vacancy in nomination by selecting a nominee for such office and all such nominations whether by primary or by executive committee shall have the same force and effect and shall entitle the nominees to all the rights and privileges that would accrue to them if they had been nominated in the regular primary elections.
“(7) It is declared to be the purpose of subsection (1) — (5) of this section to provide for special primaries to select nominees to become candidates in special elections which are necessary to be held to fill vacancies in the elective offices which cannot be filled by appointment.”
Chapter 29938, Laws of Florida, Acts of 19SS, further amended Section 100.111, Florida Statutes, F.S.A., by providing:
“(1) Whenever there is a vacancy in an elective office which may not be filled by appointment, and a special election is called by the governor to fill the vacancy in such office, nominees of recognized political parties under the primary laws of Florida shall be chosen in a special primary which shall be called by the governor who may fix the date of a primary election and if necessary a second primary election to select nominees of recognized political parties to become candidates in the special election above referred to.
“(4) The qualification fees and party assessments of such candidates as may qualify shall be the same as collected for the same office at the last previous primary for that office. The party assessment shall be paid to the appropriate executive committee of the political party to which the candidate belongs.
“(6) When used in this subsection only, the following quoted words shall have the meaning herein indicated:
“(a) ‘County office’ shall include any office which is filled by election by the voters of one (1) county only.
“(b) 'District office’ shall include any office which is filled by election by the voters of an area comprising two (2) or more counties but less than statewide.
* * * * * *
“In the event that death, resignation, withdrawal, removal or any other cause or event occurring between the last date of filing for a special or regular primary election, and the date of the first of such primary elections,, shall leave no candidate for the nomination for any county, district or state office, then in that event the secretary of state shall set the latest practicable filing date for that office which will' permit ballots to be available, and if no-such date be practicable then the secretary of state shall notify the chairman of the state executive committee,, district committee or county executive-committee of that party which lost its-candidate, as may be appropriate under the terms of this subsection, and such appropriate committee shall designate a member of its party as nominee. If any party shall lose a candidate be *823 tween the first special' or regular primary dates and a special or general election the appropriate county, district or state executive committee of such party may designate a nominee. All such nominations whether by special or regular primary or by executive or district committee shall have the same force and effect and shall entitle the nominee to all the rights and privileges that would accrue to them if they had been nominated in the regular primary elections. For the purposes of this subsection, the party offices of national committeeman and national committeewoman shall be considered as state offices.”
In 1957 Chapter 57-91 was enacted, the title of which is as follows:
“AN ACT amending Subsection (6) of Section 100.111, Florida Statutes, relating to filling of vacancies in nomination, by clarifying the wording thereof concerning the filling of such ■a vacancy in a county office; and fixing the effective date of this act.”
Subsection (6) of Section 100.111, Florida Statutes, F.S.A., is then amended to read as follows:
“(6) When used in this subsection only, the following quoted words shall have the meaning herein indicated:
“(a) ‘County office’ shall include any office which is filled by election by the electors of one county only.
* * * * * £
“In the event that death, resignation, withdrawal, removal or any other cause or event occurring between the last date of filing for a special or regular primary election, and the date of the first of such primary elections, shall leave no candidate for the nomination for any county, district or state office, then in that event the secretary of state shall set the latest practicable filing date for that office which will permit, ballots to be available, and if no such date be practicable then the secretary of state shall notify the chairman of the state executive committee, district committee or county executive committee of that party which lost its candidate, as may be appropriate under the terms of this subsection, and such appropriate committee shall designate a member of its party as nominee. If any party shall lose a candidate between the first special or regular primary dates and a special or general election the appropriate county, district or state executive committee of such party may designate a nominee. All such nominations whether by special or regular primary or by executive or district committee shall have the same force and effect and shall entitle the nominee to all the rights and privileges that would accrue to them if they had been nominated in the regular primary elections. For the purposes of this subsection, the party offices of national committeeman and national committeewoman shall be considered as state offices.”
Chapter 59-139, Laws of Florida, Acts of 1959, is entitled as follows:
“AN ACT to amend Section 100.111, Florida Statutes, relating to the filling of vacancies in nomination and office to provide for nominating or electing a successor to an incumbent not up for reelection when said incumbent dies or becomes disabled between the filing date and the first primary election or between the first and second primary election or between the second primary and general election and providing for the printing of said names on the ballot.”
Then Section 100.111 is amended to read as follows:
“Section 1. The first unnumbered paragraph of Section 100.111, Florida Statutes, which now reads, ‘In the event of death, resignation, withdraw *824 al, . . .’ and ends . . shall be considered as state offices.’ is hereby amended to provide:
“In the event that death, resignation, withdrawal, removal or any other cause or event should cause a vacancy in office or nomination between the last date of filing for a special or local primary election or between the date of the first and second primary election or between the date of the second primary election and the general election shall leave no candidate for nomination or election to any county, district or state office, then in that event the Secretary of State shall set the latest practicable filing date for that office which will permit ballots to be available and if no such date be practicable, then the Secretary of State shall notify the chairman of the state political party executive committee of that party which lost its nominee or candidate as may be appropriate under the terms of this section, or notify the chairman of all state political party executive committees if there be a vacancy in office for which it would be appropriate for more than one political party to designate a candidate or nominee. The candidate or nominee should be named as soon as possible in order that he may have his name printed on the ballot of the ensuing primary or general election and in no event shall the county commissioners be required to print a name on a ballot submitted by the appropriate committee or committees less than five days prior to the election. In the event that the ballots are printed more than five days prior to an election, the name of a committee designated candidate or nominee may be placed on the ballot with a rubber stamp or by other appropriate method. In the event that it is impossible or impractical for a committee to designate á nominee or candidate within five days prior to an election, every effort should be made by the county commissioners to have that candidate’s or nominee’s name placed on the ballot by the best, practical and appropriate means.”
The court below also stated that another difference between Section 100.111, Florida^ Statutes, 19S9, F.S.A., and comparable statutes of 1951 (which were in effect at the-time of the Supreme Court’s decision ini In re Advisory Opinion to the Governor-reported as Fla. 1952, 60 So.2d 285) was-that in Section 100.111, Florida Statutes, 1959, F.S.A. the vacancy involved was a “vacancy in an elective office which may not be filled by appointment.”
We repeat a statement previously made-in this opinion that we do not find that the changes above reflected by the amendments to Section 100.111, Florida Statutes, 1951, F.S.A., would prevent the decision of the Florida Supreme Court in In re Opinion to. the Governor, 60 So.2d 321, from being decisive in the case now before this court. It will be observed that the Supreme Court,, in its two advisory opinions to the Govern- or, reported in 60 So.2d 285 and 60 So.2d' 321, found that under the election code-passed in 1951, there was a complete revision of the general laws in respect to elections, including general primaries and special elections (Chapter 26870, Acts of 1951) that under this law it was in spirit and intent that the Governor of the State had the duty and power to provide for vacancies in nomination by calling a first primary and, if' necessary a second primary to fill such vacancies in nominations; that the Court also, determined that Chapters 97 and 99 referred to special primary elections and that, section 99.131 specifically referred to candidates of political parties nominated or selected to fill vacancies in nomination or-vacancies in office in the manner and within the time provided by Chapter 100; that no-section of Chapter 100, other than Section 100.111, dealt with the question of calling-special primary elections for the purpose of' filling vacancies, and that Section 100.111 is the only section that can be looked to in. order to determine the manner in which special primary elections may be called for the. *825 purpose of filling vacancies in nomination; "that if the Court should consider Section 100.111 in isolation the conclusion would Rave to be reached that Section 100.111 was limited to the narrow purpose of authorizing the calling of a special primary election ■only to fill a vacancy in office but when considered that Section 99.131 requires nominations of candidates of political parties to •fill vacancies in nomination they should be made in the manner provided by Chapter 100; that it was plain that the Legislature ■did not intend that Section 100.111 should be applicable only in cases of nomination to fill vacancies in office but that the section should be given the same effect “in connection with the provision of Section 99.131 as •though written into the latter statute; and that when so construed it should control the manner of filling vacancies in nomination.”
The present Section 99.131, Florida Statutes, 1959, F.S.A., provides that the county ■commissioners shall print on the general ■election ballots to be used in their respective ■counties the names of candidates nominated by primary elections or by special primary elections or put in by appropriate executive committee of any political party, provided the names are certified and filed with them at least twenty-five days prior to election day except as provided in chapter 100 for filling vacancies. And it further provides there should be printed on the ballots the names of candidates of political parties nominated or selected to fill vacancies in nomination or vacancies in office in the manner and within the time provided by ■chapter 100.
We are of the opinion that a vacancy in nomination existed in Lake County for the office of county judge after the resignation of Judge Troy Hall, Jr. after his selection as the nominee of the Democratic Party in the first primary of 1960, and that a special primary election should have been called by the Governor to fill this vacancy in nomination.
However, we are further of the opinion that a special primary election requires a first primary and if no candidate receives a majority of the vote in the first primary, a second primary should be called by the Governor to determine the nominee of the party by a majority vote.
We construe Section 100.111 wherein it is stated that in the event of a vacancy in office or nomination between the last date of filing for a special or local primary election or between the date of the first and second primary election, or between the date of the second primary election and the general election, shall leave no candidate for the nomination for any county, district or state office, then in that event the secretary of state shall set the latest practicable filing date for that office which will permit ballots to be available, etc., to mean that vacancies in nomination occurring between the last filing date of the first primary, between the date of the first and second primary and between the second primary and the general election should be filled by special primary nominations if, in the opinion of the secretary of state, there is time for such primary election prior to the general election.
Another question must be determined in this case, and that is where a primary election has been held for a vacancy in nomination occurring after the first regular primary and the Secretary of State has set the time for qualifying for a nomination in the second regular primary though no special primary was called by the Governor, does the fact that such a primary was irregular preclude a court from holding that such primary should be deemed a first special primary for the nomination of a candidate of the Democratic Party for county judge?
We are of the opinion that the candidates and the officials would be estopped at this late date to question the validity of the first primary.
In 18 Am.Jur., Elections, § 206, Statutory Regulation, it is provided:
“Acting pursuant to the power and duty conferred upon them to provide instrumentalities by which elections are *826 to be accomplished, the legislatures of the various states have established elaborate and rigid rules and regulations for the conduct of elections. Before an election, such provisions are generally regarded as mandatory and their observance may be insisted upon and enforced, but after an election, they are regarded in a somewhat different light, and the general rule in such cases is that a departure from the mode of holding an election as prescribed by statute, which does not deprive legal voters of their right to vote or permit illegal voters to participate in the election or cast uncertainty on the result, does not affect the validity of the election, unless the statute expressly declares that the particular act is essential to the validity of an election or that its omission shall render the election void or unless there is a: violation of a constitutional requirement. A statute which merely provides that certain things shall be done within a particular time or in a particular manner, and does not declare that their performance shall be essential to the validity of an election, will be regarded as mandatory if the acts in question affect the merits of the election, and as directory if they do not affect its merits.”
Our Supreme Court, in the case of State ex rel. Watson v. Gray, Fla.1950, 48 So.2d 84, 88, reflects the general view that barring fraud, unfairness, disfranchisement of voters, etc., it is too late to attack the validity of an election after the people have voted. The Court, in its opinion, said:
“The record reflects that Collins, McDonald, McMullen, Watson and Wells, on May 2, 1950, submitted their respective candidacies for the office of Congressman for the First Congressional District to the electors of the •several counties thereof, inclusive of Pinellas. It may be assumed that each candidate for this office solicited votes in the several counties of the District by contacting the voters, or by letters, telephone communications, radio addresses, newspaper advertisements, through workers interested in each candidacy, and by speeches by the candidates delivered in each county to the voters and otherwise. The constitutional invalidity of the three Acts applicable to Pinellas County was presented on June 20, 1950, some twenty-eight days after the date of the second primary. If the relator’s contentions were here sustained, the electors of Pinellas County would be denied the right or privilege of voting for a representative in the Congress of the United States — the relator and Collins would be declared the candidates receiving the highest number of votes, contrary to the fundamental democratic doctrine of our majority rule.
“It is pointed out that the relator by becoming a candidate for the office of Congressman, submitted his candidacy according to the rules of the Democratic Party in each county of the Congressional District. He never raised the constitutionality of the three Acts prior to or during the period he was seeking the nomination. He vigorously participated in each phase of the two primaries and filed this suit some 28 days after being defeated at the polls on May 23, 1950. It is contended that he cannot now be heard because of the doctrine of estoppel. The rules of the game usually are not changed while the players are on the field. It is the writer’s view that the relator has had his three strikes at the ball, and, according to the rules of the game, the batter is out. See Buck v. Triplett, 159 Fla. 772, 32 So.2d 753.
“It is our conclusion that the doctrine of estoppel is controlling and it therefore becomes unnecessary to consider other questions raised on this appeal.
“Also it seems to us that the judgment should be affirmed on the further ground that the relator has failed to *827 demonstrate that his rights have been so adversely affected by the alleged unconstitutionality of the acts assailed as to entitle him to mandamus.”
We conclude that the relator, Roy Caldwell, has not been elected the nominee of the Democratic Party for county judge in Lake County, but that a second special primary is necessary to determine the nominee and that a special election should be called by the Governor for a run-off special primary between the two high men in the second regular primary.
We reverse the lower court for further proceedings not inconsistent with this opinion.
Reversed.
KANNER and SHANNON, JJ., concur.