990 So.2d 688 (2008)
Mardi Anne LEVEY, as candidate for Broward County Judge, Circuit Group 3, Appellant,
v.
Pedro DIJOLS, as candidate for Broward County Judge, Circuit Group 3, Dr. Brenda C. Snipes, in her official capacity as Supervisor of Elections for Broward County, Florida, Bernard Isaac Bober, as candidate for Broward County Judge, Circuit Group 3, and the Broward County Canvassing Board, which consists of Sharon Zeller, Linda Pratt, Jack Tuter, Kathleen Ireland, Lee Jay Seidman, Lois Wexler, Appellees.
No. 4D08-3780.
District Court of Appeal of Florida, Fourth District.
September 24, 2008.
*689 Lewis J. Levey of Levey, Filler, Rodriguez, Kelso & De Bianchi, LLP, Miami, for appellant.
William R. Scherer of and Janine McGuire of Conrad & Scherer, LLP, Fort Lauderdale and Bruce S. Rogow, Fort Lauderdale, for appellee, Pedro Dijols.
Burnadette Norris-Weeks of Burnadette Norris-Weeks, P.A., Fort Lauderdale, for appellee, Dr. Brenda C. Snipes.
*690 MAY, J.
Mardi Anne Levey, the second-place finisher in a primary election for judicial office, appeals a trial court order that granted the third-place finisher, Pedro Dijols, post-primary-election challenge. The trial court ordered Levey's name stricken from the general election ballot and replaced with Dijols because she used her maiden name instead of her married name in her qualifying oath and in the election. Levey argues the trial court erred in its application of Florida law. We agree and reverse.

Facts
On May 2, 2008, Mardi Anne Levey filed to run for Circuit Court Judge in Broward County, Florida. See § 105.031, Fla. Stat. (2007). In qualifying to run for office, Levey used her maiden name Mardi Anne Levey instead of her married name Mardi Levey Cohen, which she had used for multiple legal purposes since her marriage in 1986. Pedro Dijols, the incumbent judge, and Bernard Isaac "Bernie" Bober, had previously filed to run for the same seat. Because two or more candidates had filed, the names of the three candidates were listed on the ballot for the August 26, 2008 primary election. § 105.051(1), Fla. Stat. (2007).
Bober received about 38% of the approximately 100,000 votes cast. After a machine and manual recount, it was determined that Levey had received 72 more votes than Dijols. The Broward County Canvassing Board certified the results. Because Bober had not received a majority of the votes, Bober and Levey were to be placed on the ballot for the November 4, 2008 general election. § 105.051(1)(b).
On September 5, 2008, Dijols filed a complaint contesting the results of the primary election under section 102.168, Florida Statutes (2007). The complaint alleged that Levey engaged in misconduct by having her maiden name "Mardi Anne Levey" placed on the ballot instead of "Mardi Levey Cohen" and that she was ineligible to run for the judicial seat because she did not use that name to conduct private and official business. The complaint further alleged that Levey had not acted in good faith and for honest purposes.
The complaint sought a writ of mandamus to compel the Broward County Supervisor of Elections and the Canvassing Board to remove Levey from the ballot for the general election and to recertify the election results with Dijols as the candidate to face Bober in the general election. In addition, the complaint sought a declaration that Levey had violated election laws by running under her maiden name and that she was not a properly qualified candidate for the Group 3 election seat. The complaint simultaneously requested a writ of quo warranto directed at the Supervisor of Elections and the Canvassing Board, alleging that Levey had violated election law and misused her husband's office.[1]
At the hearing, Dijols admitted into evidence a packet of documents to show that Levey had consistently used the name Mardi Cohen since her marriage in 1986. She had used the name Mardi L. Cohen in her resume and application with the state attorney's office where she was previously employed. The application, Commitment to Employ, and Oath of Loyalty were signed Mardi L. Cohen, as was her letter of resignation from the state attorney's *691 office. The name Mardi L. Cohen appeared on her W2 forms for that employment.
Her law office, which she took over after her husband took the bench, is named: "Law Office of Mardi L. Cohen P.A." A photo copy of Levey's social security card showed it was issued to Mardi L. Cohen and signed Mardi Levey Cohen.
In 2006, Levey qualified and campaigned for the Group 58 Broward Circuit Court seat under the name Mardi Levey Cohen. She was defeated in the general election after successfully making it to the "run off after the primary election. Levey is listed in the Florida Bar Journal, and admitted to the Florida Bar, under the name Mardi Levey Cohen. Her Florida Bar license is labeled and signed: Mardi Levey Cohen. She is registered with the Florida Department of Highway Safety and Motor Vehicles as Mardi Levey Cohen.
Levey testified and readily conceded that she used the name Mardi Levey Cohen, and Mardi L. Cohen, extensively since her marriage in 1986. She explained, however, that she never abandoned the name Levey, always used the name Levey, and merely appended Cohen to the end of her name after her marriage. She had used the name Mardi Anne Levey throughout high school and college. When she attends school and camp reunions, she uses and is known by the name Mardi Levey. She testified that she is known by many people in Florida and the community as Mardi Levey because she has never separated Mardi and Levey.
Levey spent approximately $217,000 dollars promoting the name Mardi Levey Cohen in her 2006 campaign. All of her campaign brochures, signs, buttons, and other materials promoted Mardi Levey Cohen. She explained that she received a lot of criticism for using her husband's last name in the 2006 election to allegedly attempt to ride on her husband's coattails. When she decided to run for judge in this election, she decided not to drag her husband and his name into the election and chose to run on her own merits under her maiden name, which is the name on her birth certificate. Countering Levey's explanation for using her maiden name, Dijol's counsel argued that Levey had deceptively used her maiden name because she had lost in the 2006 election under the name Mardi Levey Cohen.
Dijols testified that he became aware on May 1, 2008 that Mardi Anne Levey had qualified as a candidate against him and that she had run as Mardi Levey Cohen in 2006. He consulted with lawyers and others about bringing a challenge to Levey's choice of name, but he interpreted section 102.168 as requiring an unsuccessful candidate to wait until after an election before filing a complaint. Dijols believed that an unsuccessful candidate had ten days after the certification of the results to challenge an election.
The trial court did not attach any "evil purpose" to Levey's choice of name and found that she had NOT used the name with the intent to commit fraud. Nevertheless, because she had qualified under a name that she had not used in her private and official business the trial court found that the use of her maiden name was "not permitted" and ordered her removed from the ballot. To reach its conclusion, the trial court relied on Planas v. Planas, 937 So.2d 745 (Fla. 3d DCA 2006) and McLaughlin v. Cuyahoga Co. Bd. of Elections, 156 Ohio App.3d 98, 804 N.E.2d 1004 (2004). The trial court ordered Levey stricken from the ballot for the general election and ordered that Dijols be placed on the ballot as the second candidate. He directed the Canvassing Board to do whatever was necessary to correct the ballot.
*692 As to Levey's argument that Dijol's had waived any challenge to her choice of name by not bringing an action before the primary election, the trial court found:
Whether or not the plaintiff here should have filed on May 1st or immediately thereafter this action, I don't think constitutes laches or waiver because there was no way of knowing at that time which candidate was going to win.
And if Ms. Cohen did not win, there would have been a lawsuit in this courthouse that was unnecessary. The law permits waiting to within the ten days after the result is certified. I don't consider that an unreasonable delay or prejudicing the parties here.

Analysis
There are two truisms about Florida's election law concerning judicial races. One, eligibility to run for judicial office is controlled by Article V, section 8 of the Florida Constitution. Any statute that restricts eligibility beyond the requirements of the Florida Constitution is invalid. Miller v. Mendez, 804 So.2d 1243, 1246 (Fla.2001). "Fundamental to our system of government is the principle that the right to be a candidate for public office is a valuable one and no one should be denied this right unless the Constitution or an applicable valid law expressly declares him to be ineligible." Treiman v. Malmquist, 342 So.2d 972, 975 (Fla.1977) quoting Ervin v. Collins, 85 So.2d 852, 858 (Fla.1956); citing Pasco v. Heggen, 314 So.2d 1 (Fla. 1975).
And two, extreme care must be given to post-election challenges to avoid disenfranchising Florida's voters. Fladell v. Palm Beach County Canvassing Bd., 772 So.2d 1240, 1242 (Fla.2000). "[B]arring fraud, unfairness, disenfranchisement of voters, etc., it is too late to attack the validity of an election after the people have voted." Polly v. Navarro, 457 So.2d 1140, 1143-44 (Fla. 4th DCA 1984). These two truisms lead us to the inevitable conclusion in this case.
Article V, section 8 of the Florida Constitution defines a person's "eligibility" to serve as a circuit court judge. It requires that a candidate be an elector of this state and reside in the territorial jurisdiction of the court. The Constitution also requires that a candidate for circuit court judge have been a member of the Florida Bar for the preceding five years. The Florida Constitution does not specify what name a candidate must use on a ballot.
"Qualifying" to run in a non-partisan judicial election is controlled by section 105.031, Florida Statutes (2007). To qualify, a candidate must file an oath substantially in the form provided by statute. § 105.031(4)(b), Fla. Stat. (2007). "The statutory requirement of filing an oath cannot impose additional eligibility requirements for judicial office to those set out in the Florida Constitution." Mendez, 804 So.2d at 1246 citing State v. Grassi, 532 So.2d 1055 (Fla.1988).
The question here is not whether Mardi Anne Levey is eligible. She is. She is an elector in this state, resides within the territorial jurisdiction of the court, and has been a member of the Florida Bar for the preceding five years, albeit under the name of Mardi Levey Cohen. The question to resolve is whether she properly qualified to run in the election. The single challenge to her "qualifying" is whether Levey could use her maiden name on the oath required by section 105.031(4)(b).
Section 105.031(4)(b) instructs the candidate to "please print name as you wish it to appear on the ballot." The term "name" is not defined within the statute or in any other Florida statute pertaining to elections. Significantly, the oath does not *693 require candidates to print any particular name, not the name as it appears on their driver's license, voter's registration, nor Florida Bar license.
Black's Law Dictionary defines a "name" as: "A word or phrase identifying or designating a person or thing and distinguishing that person or thing from others." Black's Law Dictionary 1048 (8th ed. 2004). Merriam-Webster's Online Dictionary defines a "name" similarly: "a word or phrase that constitutes the distinctive designation of a person or thing."
In the context of this statute, the term "name" connotes any legal form of name the person is entitled to use and have printed on the ballot. Mardi Anne Levey is a form of Levey's name. It is the name that appears on her birth certificate. In Florida, a woman does not lose her birth-given name upon marriage. Davis v. Roos, 326 So.2d 226 (Fla. 1st DCA 1976).
Because only a limited right to contest an election existed at common law, the grounds that may be raised to contest an election are constrained to those that are expressly permitted by section 102.168(3), Florida Statutes (2007). See McPherson v. Flynn, 397 So.2d 665, 668 (Fla.1981). In 1999, the legislature amended section 102.168(3) to enumerate specific grounds for contesting an election. Ch. 99-339, § 3, at 3548, Laws of Fla. Section 102.168 permits an unsuccessful candidate to contest "the certification of election or nomination of any person to office" within ten days after the results of the election have been certified. Fla. Stat. § 102.168(1)-(2). The statute requires the candidate to set forth the grounds that allegedly establish the candidate's right to the contested office or the grounds for "setting aside the result of the election." § 102.168(3).
In his complaint, Dijols raised two grounds for contesting the primary election: (1) fraud or misconduct under section 102.168(3)(a); and (2) "ineligibility of the successful candidate for the nomination or office in dispute" under section 102.168(3)(b). As we have explained, Levey is "eligible" under the Florida Constitution. Dijol's challenge to the use of her maiden name goes to the propriety of her "qualifying." Because the statutory provisions for qualifying do not require a person to use a specific name and the trial court found no evil purpose to Levey's choice of name and no fraud or misconduct on her part, Dijols failed to establish a right to a nomination or office and did not establish a basis for setting aside the result of the primary election under section 102.168(3), Florida Statutes (2007).
The two cases relied upon by the trial court do not support its conclusion. In Planas v. Planas, 937 So.2d 745 (Fla. 3d DCA 2006), the Third District Court of Appeal found that the candidate's use of the initials "J.P." was an attempt to deceive the voting public by making it appear that the candidate, Juan E. Planas, was another well-known incumbent "J.C. Planas." Id. at 746. Planas held that the candidate could not use a nickname which he had never before used and which he adopted for the election in an apparent attempt to deceive voters.
The second case relied upon by the trial court was McLaughlin v. Cuyahoga County Board of Elections, 156 Ohio App.3d 98, 804 N.E.2d 1004 (2004). There, McLaughlin was disqualified from appearing on the ballot for an upcoming election because she had used her maiden instead of her married name, which she had used since her marriage. Id. at 1005. The Ohio court concluded that McLaughlin had abandoned her maiden name, that she designated herself under her maiden name to secure an advantage in the election, and that her failure to list her married name *694 on her declaration of candidacy disqualified her from appearing on the ballot. Id. at 1007.
While McLaughlin is factually similar to this case, its application of Ohio law renders it unpersuasive, much less binding. The McLaughlin court applied a specific Ohio statute that required candidates to list any former names on their declaration of candidacy if the person had changed names in the past five years. The statute made an exception for a woman's use of her married name, but that exception did not apply to a woman's use of her maiden name. Id. at 1006. Thus, McLaughlin's failure to list her married name, in addition to her maiden name, established the statutory basis for removing her from the ballot. Florida has no similar statutory provision.[2]
Because we find the trial court misapplied Florida law, we need not reach the issues of waiver, estoppel, and laches. We note, however, that a substantial number of cases in Florida hold that remedies are available to challenge whether a candidate has properly "qualified" to appear on a ballot, and to seek removal of that candidate's name from the ballot, BEFORE the election is held. See Miller v. Mendez, 804 So.2d 1243 (Fla.2001); Schurr v. Sanchez-Gronlier, 937 So.2d 1166 (Fla. 3d DCA 2006); Miller v. Gross, 788 So.2d 256 (Fla. 4th DCA 2000); Smith v. Crawford, 645 So.2d 513 (Fla. 1st DCA 1994); Marina v. Leahy, 578 So.2d 382 (Fla. 3d DCA 1991); McClung v. McCauley, 238 So.2d 667 (Fla. 4th DCA 1970); White v. Stargel, 2006 WL 5509526 (Fla.2d Cir.Ct.2006). See also State ex rel. Siegendorf v. Stone, 266 So.2d 345 (Fla.1972); State ex rel. Haft v. Adams, 238 So.2d 843 (Fla.1970); Eastmoore v. Stone, 265 So.2d 517 (Fla. 1st DCA 1972); State ex rel. Cherry v. Stone, 265 So.2d 56 (Fla. 1st DCA 1972).
The challenge in this case comes AFTER election officials had approved the candidate's choice of name for use on the ballot, AFTER the ballots for the primary were printed, AFTER the primary was held, and AFTER the electors had voted in sufficient number to place Levy in the position of finishing second.
In Winterfield v. Town of Palm Beach, 455 So.2d 359 (Fla.1984), the Supreme Court of Florida observed:
In preserving elections in the face of post-election challenges to pre-election irregularities, this Court has found that a party is estopped from voiding an election where he was on notice of the irregularity before the election. `The aggrieved party cannot await the outcome of the election and then assail preceding deficiencies which he might have complained of to the proper authorities before the election.' Pearson v. Taylor, 159 Fla. 775, 776, 32 So.2d 826, 827 (1947) (post-election challenge to sufficiency of petition which lead to election).
Id. at 362. See also Speigel v. Knight, 224 So.2d 703, 706 (Fla. 3d DCA 1969) The general view, and that adopted in Florida, is that "barring fraud, unfairness, disenfranchisement of voters, etc., it is too late to attack the validity of an election after the people have voted." Baker v. State ex rel. Caldwell, 122 So.2d 816, 826 (Fla. 2d DCA), cert. denied, 122 So.2d 777 (Fla. 1960). See Polly v. Navarro, 457 So.2d 1140, 1143-44 (Fla. 4th DCA 1984).

Conclusion
The trial court erred in its application of Florida's statutory and case law to the *695 facts of this case. Levey was eligible to run for office, pursuant to Article V, section 8 of the Florida Constitution. Levey filed an oath in accordance with the requirements of section 105.031(4)(b), Florida Statutes (2007). The voters voted, the votes were counted, and Levey finished second. Her name should appear on the ballot for the general election as she was one of the two candidates receiving the highest number of votes. § 105.051(1)(b).
We therefore reverse the trial court's order. Levey's name shall appear on the ballot for this seat in the November 4, 2008 election. If the Supervisor of Elections cannot correct the ballots to reflect today's decision, then a notice to the voters similar to the one approved in Cobb v. Thurman, 957 So.2d 638 (Fla. 1st DCA 2006), may be necessary.
Because of the time constraints for preparing the ballots for the upcoming election, no motion for rehearing will be entertained, and this decision will become effective immediately.
POLEN and KLEIN, JJ., concur.
NOTES
[1] Levey's husband is Circuit Court Judge Dale Cohen. Dijols filed a motion to recuse all the Broward County Circuit Judges. The Chief Judge of the Seventeenth Judicial Circuit arranged for a retired Miami-Dade Circuit Court Judge to hear the case without objection. The hearing was held on September 17, 2008.
[2] We note that no case has invalidated the results of a primary or general election based on the name of the candidate designated to be placed on the ballot in qualifying paperwork. The challenge in both Planas and McLaughlin came before any election had taken place.