SALTER, J.
The Republican Party of Miami-Dade County and Republican Party of Florida (together, “Party”) appeal a circuit court order granting an emergency motion for temporary injunction. The temporary injunction required the Party to seat 19 individuals (the plaintiffs below, appellees here) as Miami-Dade Executive Committee members. The Party had declined to recognize the appellees as Executive Committee members because of their failure to file a Party loyalty oath before the June 20, 2008, qualifying deadline.
This case first requires us to harmonize two statutory provisions in the Florida Election Code: section 99.021, Florida Statutes (2008), regarding the form of candidate oath required by the State public election authorities, and section 103.091, Florida Statutes (2008), describing the rights and duties of political parties and their executive committees. We conclude that the Party retained an express statutory right to “provide for the selection of its ... county executive committee in such manner as it deems proper,”[1] but that it (a) failed to make the new forms sufficiently accessible to prospective candidates to comport with the Election Code and (b) failed to bring an action to enforce the new requirement before the election. Accordingly, we affirm the injunction below.
I. Applicable Facts
The underlying facts are not disputed. Prior to the August 26, 2008, election, the Party allowed applicants and candidates for the Miami-Dade Executive Committee to execute the Party’s loyalty oath (as opposed to the form of oath provided by the County Elections Department under section 99.021) after the qualifying deadline but before a successful candidate took *1115 office. At its annual meeting in February 2008, however, the Republican Party of Florida amended the Party’s loyalty oath. Thereafter, the Party issued a memorandum to all state committee members interpreting Republican Party of Florida Rule 9 to require that the Party’s new loyalty oath be signed and filed with the Party’s County chairperson before the end of the qualifying period for the election.
The new loyalty oath required by the Party stated:
I,_, hereby swear and affirm that during my term of office I will not actively, publicly, or financially support the election of any candidate other than the Republican candidate in a partisan unitary, general or special election, or a Registered Republican in non-partisan elections, other than Judicial races governed under Florida Statute 105, if there is a registered Republican running for the same office, unless the county executive committee has taken an affirmative vote to endorse one Republican over another per Rule 8(B). I further swear and affirm that I will not engage in activities or conduct that may be deemed by the Grievance Committee and affirmed by the RPOF Chairman as likely to injure the name of the Republican Party or interfere with the activities of the Republican Party.
In May 2008, the chair of the Party’s Miami-Dade County Executive Committee convened a meeting of the committee. She discussed the new oath and the requirement that it be filed with her by the end of the qualifying period — noon on June 20, 2008. The new oath and procedure were also mentioned in a written agenda for the meeting that was circulated to committee members. On June 12, 2008, the chair of the Republican Party of Florida sent a memorandum to all Florida County executive committee chairpersons and all Republican elected officials advising them of the new oath and procedure. The Party did not, however, mail the change in procedure and new form of loyalty oath to all registered Republicans in Miami-Dade County or post the information and new form on its website.
The qualifying period for the August 26 election was from noon on June 16, 2008, to noon on June 20, 2008. All of the appellees filed their applications and section 99.021 statutory oath forms with the Miami-Dade Elections Department on the last day with only about an hour left before the end of the qualifying period. They did not file their papers in person, but instead relied on a local lawyer to file all 19 sets of applications as their agent. When the agent was advised of the additional requirement that the Party’s new loyalty oath also be signed and filed with the County office of the Party by the qualifying deadline, the agent was unable to distribute the new oath forms, have them signed, and get them filed in the time remaining.
Before the election took place, (1) the appellees signed and delivered[2] the Party’s new loyalty oath forms to the County Office, and (2) the chair of the Party’s County executive committee notified the appellees in writing that their Party loyalty oath forms were untimely and that they would not be eligible to become members of the executive committee.
Neither the Party nor the appellees took any legal action before the August 26 election to obtain a determination of the appel-lees’ right to be on the ballot or to serve if they prevailed in votes cast. As a result, the appellees’ names were included among *1116 the names of all the candidates on the relevant ballots. The appellees prevailed in the election, but the Party refused to seat them after the election (again basing that refusal on the alleged untimeliness of delivery of the new Party loyalty oath). The appellees then filed their circuit court complaint for declaratory and injunctive relief and an emergency motion for temporary injunction.
II. The Statutory Issue
In granting the temporary injunction, the trial court made the following conclusion of law:
In enacting section 99.021, the Florida Legislature made clear that the loyalty oath contained therein was the only oath that could be required of a candidate for county executive committeeperson as a condition for qualifying as a candidate.
We find no such intention. To the contrary, and harmonizing section 103.091 (the special provision applicable to political party elections) with section 99.021, we find that the legislature expressly authorized a political party to “provide for the selection of its ... county executive committees in such manner as it deems proper,” [3] so long as the party does not attempt to eliminate the minimum requirements imposed in section 99.021.
Section 99.021(l)(a)l. requires a candidate to execute a written oath that he or she complies with these conditions for candidacy:
1. The candidate must be a qualified elector of the requisite County;
2. He or she is qualified under the Constitution and laws of Florida to hold the office in question;
3. He or she has taken the oath required by sections 876.05-.10, Florida Statutes;[4]
4. The candidate has not qualified for any “other public office in the state, the term of which office or any part thereof runs concurrent with that of the office he or she seeks;” and
5. He or she has resigned from any office from which he or she is required to resign pursuant to section 99.012.
Section 99.021(l)(b) requires any person seeking to qualify for “nomination”[5] as a candidate of any political party to “state in writing” these additional facts:
1. The party of which the person is a member.
2. That the person is not a registered member of any other political party and has not been a candidate for nomination for any other political party for a period of 6 months preceding the general election for which the person seeks to qualify.
3. That the person has paid the assessment levied against him or her, if any, as a candidate for said office by the executive committee of the party of which he or she is a member.
*1117 Although the trial court referred to section 99.021 and “the loyalty oath contained therein,” that section does not in fact contain any pledge of loyalty that is applicable to a political party. Nothing within section 99.021 purports to preclude a political party from imposing other requirements for service on a county executive committee, so long as those conditions are not inconsistent with the minimum requirements found in that section. And turning to section 103.091 — a set of provisions applicable mly to political parties, their executive committees, and their membership rules — we conclude that it should be given precedence in construing the two statutes in pari materia.
The logic of these provisions as applied to the new Party loyalty oath and deadline is apparent. First, no political party achieves a “leg up” on the other under this reading, because the same analysis applies to all parties other than a “minor political party.”[6] Second, and as the legislature intended, each party provides its own rules for governance and eligibility for leadership. Each party’s executive committee is permitted to establish any rules for eligibility that do not expressly conflict with the minimal requirements found in section 99.021.
Under the analysis proposed by the specially concurring opinion, a political party could not establish, as a requirement for an individual wishing to run for the party’s state or local executive committee, a condition that the prospective member certify first to the party’s leadership that he or she has been registered as a member of the party for a specified period before the date of the election, or that he or she has read and will comply with the party’s platform and written rules. These are hypothetical examples of executive committee eligibility rules that would not conflict in any way with the statutory form of oath required by section 99.021.
The specially concurring opinion would hold that any such eligibility restrictions, because they exceed the minimal conditions set forth in section 99.021, are unlawful and could be enjoined. As described in section IV of this opinion, that analysis would impermissibly nullify both (a) the constitutional rights of association of a political party’s members and (b) the express statutory grants of authority (in subsections 103.091(1) and (4)) to a political party to elect its state and local executive committee members “in such manner as it deems proper,” and pursuant to the party’s own internal membership rules.
To summarize this analysis of the two statutes as they apply to the Party’s new oath and deadline, different statutory provisions within the Election Code should be construed together to harmonize the statutes, to give effect to the Legislature’s intent, and to avoid rendering one of the two provisions meaningless. Fla. Dep’t of State v. Martin, 916 So.2d 763, 768 (Fla.2005). Further, the statute applying specifically to political party executive committee candidates should control in the event of a conflict with the general statute applying to candidates of every stripe — for state constitutional office, for state and federal elected office, and for political party committee positions. See State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So.2d 1067, 1073 (Fla.2006).
Harmonizing the statutes as we must, we conclude that the Party has the right and the authority to require its own form of loyalty oath as a condition of eligibility *1118 to seek election to a committee membership position, and the right and authority to require receipt of that oath (as a party membership rule) before the election.[7] That is not, however, the end of the analysis.
III. Accessibility of the New Form of Oath; Timing of a Challenge
The trial court also recognized the notice, fairness, and due process issues that arose in this particular case. Here, the appellees did not refuse to execute the Party’s new form of oath; they executed that oath (or in a few cases, offered to do so) promptly after learning that it was required. The Party does not argue, and did not prove, that the appellees failed to file the oath with the Party office before the qualifying deadline because they were attempting to avoid or circumvent the requirement. Rather, the record establishes that while existing Party officials and executive committee members were informed of the additional requirement, no mass mailing or website bulletin disseminated the notice and form to others.[8]
The Party’s decision not to challenge the plaintiffs before the election is also a fatal flaw in its case below. The Party was fully aware of the appellees’ alleged non-compliance before the election, but did not attempt to have the allegedly-ineligible names stricken from the ballot. Florida law recognizes an estoppel in a case such as this, in which the alleged irregularities were known before the ballots were cast and results announced. Winterfield v. Town of Palm Beach, 455 So.2d 359, 362 (Fla.1984); Levey v. Dijols, 990 So.2d 688, 694 (Fla. 4th DCA 2008).
IV. The Specially Concurring Opinion
The specially concurring opinion which follows necessitates a further response on several points. While we naturally agree with that opinion that citizens have a fundamental right to run for public elective office, political parties are not governmental entities, and there is no fundamental right on the part of a citizen to run for the executive committee of a political party without obeying the party’s rules. Political party members have a constitutional right “not to associate” with those who do not share their party platforms or rules,[9] so long as they do not engage in *1119 prohibited acts of discrimination. No such acts are alleged here.
Florida’s Election Code has therefore recognized that a state may not interfere in the internal governance and operations of political parties.[10] The concurring opinion concludes that, when a party chooses under section 103.091(4) to allow the state’s electoral apparatus to conduct the election of executive committee members, the political party surrenders its own rights to impose additional qualifications (beyond those imposed by the statutory oath, but not inconsistent with them) for the positions. If that were so, and it is not, the state would thereby unconstitutionally interfere with the parties’ well-established rights of self-governance.
This is not simply a matter of, in the words of the concurring opinion, “following the Election Code just like everyone else.” Of course a prospective candidate for a party executive committee position must comply with the applicable requirements of the Election Code (in this case, filing within the time period specified and using the forms specified by the Department of State). The mistaken premise in the concurring opinion, however, is that these are the exclusive requirements applicable to a political party executive committee candidate and that those requirements preempt the provisions of section 108.091 (i.e., that the committee operates in accordance with the party’s own set of rules). Section 108.091 expresses no such intention, and such a reading contravenes both (a) the principles of statutory construction detailed in section II of this opinion and (b) the constitutional prohibition on state interference in political party governance. The concurring opinion’s analysis would create a dilemma in which a political party may either keep its own membership rules and run its own election (section 103.091(1)) or accept a state-run election of the committee members (under section 103.091(4)) — at the price of being unable to impose or enforce any membership rules other than those fixed by the state. The state has expressed no intention to require such a choice, nor does the statute carry any hint that its internal subsections are mutually exclusive.
Finally, the specially concurring opinion’s analysis of the 1980 and 1983 Opinions of the Attorney General overlooks these critical facts: the Attorney General recognized that his office had no portfolio to express opinions regarding “party politics;” and the Supreme Court of Florida had long before held that the parties have the ultimate right to set the requirements for election to party office. Alexander v. Booth, 56 So.2d 716, 719 (Fla.1952) (holding that the courts have “no right, power, or authority to exercise any control or regulation over the discretion vested in State Executive Committees by statute”). Nor did the Attorney General consider or express any opinion in the 1980’s regarding the unconstitutionality of state interference in the internal governance of a political party.
Though completely respecting the specially concurring opinion and its author, we conclude that the dispositive issues in this case were a lack of fair notice of the new Party requirements to the appellees, and a tactical decision not to attempt to strike the appellees from the ballot before the election. The new Party loyalty oath and deadline were not themselves unlawful or impermissible.
*1120 V. Conclusion
We affirm the trial court and injunction on somewhat different grounds than those set forth in the order under review. See § 59.041, Fla. Stat. (2008). Our analysis pretermits any need to reconsider the adequacy of the injunction bond. We also affirm, without discussion, the trial court’s evaluation of the elements required for the entry of a temporary injunction.
As a matter of statutory construction, we find that the Party has the right to establish its own separate form of loyalty oath, and a filing deadline for that form, so long as it makes the new rule and new form reasonably (and timely) known and available to the prospective candidates. That right does not excuse the candidates’ obligations to comply with sections 103.091(4) and 99.021, and of course the Party cannot require the supervisor of elections to monitor compliance with any of the Party’s own rules.[11] Here, the trial court found (and this evidence was not disputed below) that the Party’s notices regarding the new form and deadline were too little and too late. We agree.
We also find that the Party was es-topped, by virtue of its knowledge of the alleged ineligibility of the appellees before the election, to await the outcome of the election and the commencement of a lawsuit by the appellees before submitting the alleged ineligibility to a court for resolution.
Temporary injunction affirmed.
RAMIREZ, C.J., concurs.

. § 103.091(1), Fla. Slat. (2008).

. The record indicates that a few of the 19 appellees offered to file the form but did not actually deliver it to the Party’s office because they had been told that it would be untimely.

. § 103.091(1), Fla. Stat. (2008).

. There is no apparent purpose for this oath as regards political party executive committee members. Section 876.09, "Scope of law,” specifies that these provisions only apply to "employees and elected officers of the state, including the Governor and constitutional officers and all employees and elected officers of all cities, towns, counties, and political subdivisions, including the educational system.” The term "political subdivisions” does not include political parties, per section 1.01(8), Florida Statutes (2008).

.Section 99.021(2) clarifies that although "nomination” is used (rather than "nomination or election”), these provisions "shall apply with equal force and effect to, and shall be the oath required of, a candidate for election to a political party executive committee office.”

. A “minor political party” is defined by section 97.021(17) of the Election Code as a group which has less than 5% of eligible state electors registered as members (determined as of the January 1 preceding a primary election).

. Requiring the Party loyalty oath before the qualification deadline is arguably more efficient. If a candidate fails or refuses to deliver the oath to the Party before the qualification deadline, there is still time to have the prospective candidate's name stricken from the ballot so that the voters can choose among qualified candidates. If the Party oath is not required to be delivered until after the voting and before taking office, an otherwise duly-elected person refusing to execute the oath may leave an empty position or make a second round of voting necessary.

. We do not discount the Party’s position that it took some measures to make an individual at the Miami-Dade Elections Department aware of the new requirement, and also to station a Party representative at the Department to answer questions and provide the new form to persons intending to qualify. Unfortunately, these measures occurred only days before the qualifying deadline and did not provide broad exposure and early availability of the information and forms. The Party determined that a mass mailing to all registered Republicans in the County would be prohibitively expensive, but this only suggests that the new timing for the new form was not sufficiently critical to warrant such an expense.

. Democratic Party v. Wisconsin ex rel. LaFollette, 450 U.S. 107, 122, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981). Note 22, p. 122, quotes L. Tribe, American Constitutional Law 791 (1978): "Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being."

. Cal. Democratic Party v. Jones, 530 U.S. 567, 574, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000), prohibits such interference, and that is why the specific political party provisions in section 103.091 defer to “the rules of the state executive committee” of the party and allow the party to select that committee "in such manner as it deems proper.”

. In this case, for example, the Party's loyalty oath was to be delivered to the Party office, not the supervisor of elections. The Parly thus did not attempt to impose some extra-statutory duly on the supervisor of elections.