PER CURIAM.
This matter is before the Court for review of the recommendation of the Investigative Panel of the Florida Judicial Qualifications Commission (JQC) that Judge Peter A. Bell, be publicly reprimanded. We have jurisdiction. See art. V, § 12, Fla. Const. We approve the JQC’s findings and recommended sanctions.
*83 FACTS
The Investigative Panel of the Judicial Qualifications Commission (JQC) issued a notice of formal charges against County Judge Peter A. Bell, charging him with conduct alleged to violate Canons 1,[1] 2A,[2] 3B(1),[3] and 3B(2)[4] of the Code of Judicial Conduct.[5] The charges against Judge Bell stem from his actions on March 14, 2008, while he was sitting as a county judge for Charlotte County, Florida. On that date, a former husband appeared before him as a defendant in a domestic violence battery case. After reading the probable cause affidavit, Judge Bell found that probable cause existed for the former husband’s domestic battery charge.[6] Moreover, Judge Bell found that the probable cause affidavit contained facts sufficient to establish probable cause that the former wife had also committed an act of domestic battery in attempting to force the former husband from her home.[7] Despite Deputy Rivera’s findings and law enforcement’s determination to arrest only the former husband, and in the absence of a complaint from the former husband, the Charlotte County Sheriffs Office, or the State Attorney’s Office, Judge Bell ordered sua sponte for the former wife, who was present in court as a victim of domestic violence, to be taken into custody. In accord with Judge Bell’s order, the former wife was arrested, incarcerated overnight, and ordered to appear the next day for first appearance.
*84 At the JQC investigatory proceeding, Judge Bell explained his relationship with the former couple. Judge Bell stated that he met the former husband, an attorney practicing criminal law, approximately fifteen years ago while they both worked as sole practitioners and before the former husband’s marriage to the former wife. During the marriage, the former couple attended the same church as Judge Bell and the judge would interact with them. The judge’s children also provided babysitting services for the former couple. After the former couple were divorced, the former husband would come before Judge Bell in a professional setting, with Judge Bell reviewing his cases on a monthly basis. Judge Bell had also spoken to the former wife at a social event.
Judge Bell then explained the reasons behind his conduct, asserting that he had the former wife arrested because it was she who pushed the former husband first, thus transforming the argument from a verbal to a physical argument. Therefore, it appeared to the judge that the former wife was the primary aggressor and that the police officer had arrested the former husband for some other reason than his being the primary aggressor. Judge Bell found that the facts in the probable cause affidavit did not support the officer’s conclusion that the former husband was the primary aggressor. It appeared to him that the officer had arrested the former husband because he was a male, and that the officer had exhibited bias towards the man and leniency toward the woman. Thus, he found gender bias or some other inappropriate conduct on the part of the police officer. Accordingly, Judge Bell stated that he believed he acted lawfully in his orders as to the former wife. Yet Judge Bell admitted that he would not have had the former wife arrested or taken any other action if she had not been in the courtroom that day. Judge Bell also acknowledged that his actions had the potential appearance of impropriety.
The JQC and Judge Bell reached an agreement and entered into a stipulation in which Judge Bell acknowledged that he violated Canons 1, 2A, 3B(1), and 3B(2) of the Code of Judicial Conduct. According to the stipulation, Judge Bell accepted full responsibility for the conduct and admitted that it should not have occurred and that his actions had the appearance of unfairness, which eroded the confidence of the public in the impartiality and integrity of the court system. Moreover, Judge Bell expressed his regret and apologies for such conduct and, in light of the Florida Canons, he acknowledged that “his understanding of the effect of his conduct was erroneous” and that he failed to properly appreciate the implementation of his duties as judge. Additionally, Judge Bell denied that he intended to violate the applicable Canons and contended that he acted honestly and with a good faith belief that such conduct was appropriate. Because the JQC concluded that Judge Bell’s conduct was misguided but not ill-intentioned, it recommended a public reprimand.
ANALYSIS
Review of Findings
In our previous reviews of JQC cases, we have explained:
[W]e are authorized under the Florida Constitution to “accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission” and to “order that the justice or judge be subjected to appropriate discipline.” Art. V, § 12(c)(1), Fla. Const. “This Court reviews the findings of the JQC to determine if they are supported by clear and convincing evidence and reviews the recommendation of discipline to determine whether it *85 should be approved.” In re Pando, 903 So.2d 902, 903 (Fla.2005). While the Court gives the JQC’s findings and recommendations great weight, “the ultimate power and responsibility in making a determination rests with this Court.” In re Davey, 645 So.2d 398, 404 (Fla.1994). Thus, “we review the findings to ensure that there is ‘clear and convincing evidence’ to support the alleged ethical violations” and determine whether to approve the recommendation of discipline. In re Andrews, 875 So.2d 441, 442 (Fla.2004) (quoting In re Kinsey, 842 So.2d 77, 85 (Fla.2003)).
In re Maloney, 916 So.2d 786, 787 (Fla.2005). Moreover, “[i]n cases where a judge admits to wrongdoing and the JQC’s findings are undisputed this Court will ordinarily conclude that the JQC’s findings are supported by clear and convincing evidence.” In re Diaz, 908 So.2d 334, 337 (Fla.2005).
In the case before us, we accept the findings of the JQC. Judge Bell has acknowledged that he violated Canons 1, 2A, 3B(1), and 3B(2) of the Code of Judicial Conduct. Our own independent review confirms that Canons 1 and 2A were violated when Judge Bell’s actions resulted in the former wife’s improper incarceration. First, Judge Bell failed to “participate in establishing, maintaining, and enforcing high standards of conduct,” and to personally observe those standards so that the integrity of the judiciary may be preserved. Fla.Code of Jud. Conduct, Canon 1. Second, Judge Bell failed to fulfill his duty to “respect and comply with the law and [to] act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Fla. Code of Jud. Conduct, Canon 2A. Instead, Judge Bell’s noncompliance with the law and the appearance of impropriety in his conduct impaired public confidence in the integrity and impartiality of the judiciary.
In addition, Judge Bell violated Canons 3B(1) and 3B(2) when he usurped the role of the State Attorney’s Office by ordering sua sponte the arrest of the former wife. Canon 3B(1) requires a judge to “hear and decide matters assigned to the judge,” while Canon 3B(2) requires a judge to “be faithful to the law and maintain professional competence in it.” Fla. Code of Jud. Conduct, Canons 3B(1) and 3B(2). In In re Inquiry Concerning a Judge, J.Q.C. No. 77-16, 357 So.2d 172 (Fla.1978), this Court noted the limits that every judge must observe in his or her administration of the law:
Judges are required to follow the law and apply it fairly and objectively to all who appear before them. No judge is permitted to substitute his concept of what the law ought to be for what the law actually is. He may exercise his judicial discretion conservatively or liberally, and he may temper justice with mercy, but he may not deny justice to any person. He may not withhold justice from one litigant in favor of another for whatever reason. Every judge is answerable for excesses or abuse of his awesome power. There is no place in our system for justice by whim or capricious notion.
Id. at 179. By engaging in the conduct outlined in the stipulation agreement, Judge Bell has failed to follow these directives. As the JQC found, Judge Bell’s conduct “resulted in the inappropriate incarceration of the victim of a domestic battery case.”
Based on our independent review of the stipulation and Judge Bell’s acknowledgement of his wrongdoing, we conclude that there is clear and convincing evidence supporting the JQC’s findings.
*86 Discipline
 Because we have concluded that the findings of the JQC are supported by clear and convincing evidence, we give the findings “persuasive force and great weight” in our consideration of the JQC’s recommended discipline. In re Maloney, 916 So.2d at 787-88. In its amended findings and recommendation, the JQC stated that “in the interests of justice, the public welfare and sound juridical administration will be well served by a public reprimand of Judge Bell.” Judge Bell does not challenge the propriety of a public reprimand. Considering the nature of Judge Bell’s conduct, we approve the JQC’s recommendation.
Although the conduct in this case is one of first impression for this Court, the JQC’s recommendation is appropriate when compared to the discipline in other cases involving a judge’s (1) failure to observe high standards of conduct, (2) noncompliance with the law and appearance of impropriety that impaired public confidence in the integrity and impartiality of the judiciary, (3) failure to hear and decide matters assigned to the judge, or (4) failure to remain faithful to the law and maintain professional competence in it. See In re Barnes, 2 So.3d 166, 175 (Fla.2009) (approving public reprimand where judge filed petition for writ of mandamus seeking to compel compliance with his view of proper pretrial release procedures); In re Allen, 998 So.2d 557, 566 (Fla.2008) (finding public reprimand appropriate discipline where judge issued a concurring opinion accusing a fellow appellate judge of judicial corruption based on unverified facts that were not in the record); In re Aleman, 995 So.2d 395, 401 (Fla.2008) (holding that judge’s conduct of forcing defense counsel to prepare handwritten motion for disqualification of judge within a very short period of time and then threatening counsel with contempt in first-degree murder prosecution warranted public reprimand); In re Brown, 748 So.2d 960, 961-62 (Fla.1999) (concluding that a public reprimand was warranted where judge signed judicial documents relating to actions involving his daughter-in-law); In re Miller, 644 So.2d 75, 79 (Fla.1994) (finding public reprimand appropriate discipline where judge wrote letters to newspaper criticizing judicial system, gave mother notice of child custody hearing after hearing began, and forced mother to act as her own attorney in a case in which judge lacked jurisdiction); In re Gridley, 417 So.2d 950, 955 (Fla.1982) (approving public reprimand where judge personally injected himself and his office into a criminal matter as an advocate for the defendant). Accordingly, we find that a public reprimand, as disciplinary action, is consistent with governing precedent and is an appropriate discipline.
CONCLUSION
For the reasons stated, we approve of the stipulation and the JQC’s recommendation that Judge Bell receive a public reprimand. Accordingly, we hereby command Judge Bell to appear before this Court for administration of a public reprimand at a time to be established by the Clerk of this Court.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.

. Canon 1 is titled, "A Judge Shall Uphold the Integrity and Independence of the Judiciary” and provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Fla.Code of Jud. Conduct, Canon 1.

. Canon 2 is titled, “A Judge Shall Avoid Impropriety and the Appearance of Impropriety in all of the Judge's Activities." Subsection A provides: “A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Fla.Code of Jud. Conduct, Canon 2k.

. Canon 3 is titled, "A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.” Subsection B(l) provides: "A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.” Fla.Code of Jud. Conduct, Canon 3B(1).

. Canon 3B(2) provides: "A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.” Fla.Code of Jud. Conduct, Canon 3B(2).

. In the Notice of Formal Charges, the JQC alleged that Judge Bell's actions "usurped the role of the State Attorney's Office and altered public documents to effect [his] decision.” However, neither the Amended Findings and Recommendation of Discipline nor the Stipulation addressed the altering of public documents.

. Charlotte County Deputy Sheriff Liborio Rivera, who was the law enforcement officer dispatched to the former wife's home, executed the probable cause affidavit. The affidavit stated that Deputy Rivera had interviewed the defendant, the former wife, and their two minor children. The affidavit further stated that the defendant was the primary aggressor based on the interviews, the injuries inflicted on the former wife, and the location of the incident.

. Judge Bell came to this conclusion after doing about five minutes worth of research on his computer. During that time, Judge Bell researched whether the former wife had a defense because the former husband was in her home and whether a battery had actually occurred.