PER CURIAM.
This matter is before the Court for action on the recommendation of the Florida Judicial Qualifications Commission (JQC) that Broward County Judge Dale C. Cohen be publicly reprimanded and charged the costs of proceedings based upon findings that he violated the Code of Judicial Conduct. We have jurisdiction. See art. V, § 12, Fla. Const. For the reasons discussed in this opinion, we approve the JQC’s recommendation.
I. FACTS AND PROCEDURAL HISTORY
On February 25, 2010, the Investigative Panel of the JQC filed a Notice of Formal Charges against Judge Cohen. The charges arose out of a hearing on a motion for disqualification that was filed on August 6, 2009, by an attorney appearing before Judge Cohen. The motion alleged the existence of a conflict between the attorney and Judge Cohen’s wife. At a hearing on the motion, Judge Cohen called his wife as a witness to refute the allegations in the motion. Judge Cohen later held additional hearings in which he questioned the attorney’s clients and threatened to file a complaint against the attorney with The Florida Bar. The JQC filed its Findings, Conclusions and Recommendations with this Court on March 28, 2011, in which it found Judge Cohen guilty of violating Canons l,[1] 2A,[2] 2B,[3] 3B(1), 3B(2), 3B(7),[4] and 3E(l)(d)[5] of the Code of Judicial Conduct.
*929 A. Background
The parties have stipulated to numerous facts surrounding the case as well as to the authenticity of relevant records and documents, including transcripts of the ev-identiary hearings which resulted in the investigation of Judge Cohen by the JQC. Accordingly, the pertinent facts on which the instant charges and findings are based are largely undisputed. In 2006, Mardi Levey Cohen, the wife of Judge Dale C. Cohen, ran unsuccessfully for judicial office in Broward County. Attorney Stephen Melnick was a supporter of Levey Cohen during that campaign. In 2008, Levey Cohen ran for a circuit court seat held by then-Judge Pedro Dijols. Melnick supported Judge Dijols in that election. Following the primary election, Judge Dijols filed a lawsuit against Levey Cohen, arguing that she had improperly campaigned under her maiden name. Although the trial court found in Judge Dijols’ favor, that decision was reversed by the Fourth District Court of Appeal.[6] Le-vey Cohen was later defeated in the general election. In January 2009, Levey Cohen filed financial paperwork with the Broward County Supervisor of Elections, allowing her to run again in the 2010 elections.[7]
Following Levey Cohen’s unsuccessful 2008 campaign for judicial office, attorney Melnick was slated to appear before Judge Cohen as counsel in the case of State v. Rigby, Case No. 08-16006-CF-10A (Fla. 17th Jud. Cir.). On November 18, 2008, Melnick filed a motion requesting that Judge Cohen recuse himself from the case. The motion first alleged that Melnick had been retained by the defendant, Kevin Rigby. The motion then stated:
4. While the above case was pending the undersigned Counsel began to work as an active fund raiser, and speaker on behalf of the Honorable Judge Pedro Dijols retention campaign.
5. In fact prior to the fund raiser for Judge Dijols at the law office of the undersigned Counsel, the undersigned received a telephone call from Mardi Cohen who was running under the name Mardi Levey.
6. During this telephone conversation Ms. Cohen threatened that the fund raiser information posted by the undersigned was in violation of election rules and that the undersigned was making a big mistake.
The motion further alleged that in the course of the election, Melnick participated *930 in a lawsuit against Levey Cohen on behalf of Judge Dijols. The motion stated that the defendant had been advised of the facts surrounding the election and that, based on those facts, he did not believe he would receive a fair or impartial trial before Judge Cohen. Judge Cohen granted the motion to recuse. In the following months, Melnick filed approximately sixteen additional recusal motions in cases before Judge Cohen, all of which were granted. In each case, Melnick alleged the same grounds for disqualification as in the Rigby motion.
On the morning of August 6, 2009, Mel-nick filed a motion seeking Judge Cohen’s recusal in the case of State v. Gibbs, Case No. 08-22681-10A (Fla. 17th Jud. Cir.). The motion was in substance identical to the recusal motions Judge Cohen had previously granted. Rather than grant the motion, however, Judge Cohen asked Mel-nick to return to the courtroom after lunch, and informed Melnick that the motion would be addressed at that time.
That afternoon, Judge Cohen held an evidentiary hearing on the motion to re-cuse. At the beginning of the hearing, Judge Cohen announced his intention to call his wife, Levey Cohen, as a witness. Melnick objected, arguing that the hearing would require the court to weigh his credibility against Levey Cohen’s credibility. Judge Cohen overruled the objection, stating, “We’ll approach that bridge when we get to it.” Judge Cohen then questioned Levey Cohen about the facts alleged in the recusal motion. Levey Cohen testified that in 2008, when she was running in an election against Judge Dijols, she saw an advertisement for Judge Dijols’ retention on a blog that was missing a disclaimer. She was aware that Melnick was working on behalf of Judge Dijols’ campaign, so she called to inform him about the missing disclaimer. Cohen said that she had been friends with Melnick for many years and described the conversation as friendly. She denied making any threats. She also said that she was not aware of Melnick’s involvement in any litigation on behalf of Judge Dijols.
Melnick conducted a cross-examination and disputed Levey Cohen’s account of the phone conversation. He asked whether the conversation involved a missing disclaimer, or whether it concerned the use of the term “re-elect” versus the term “retain” on the advertisement. Levey Cohen agreed that may have been the subject of the conversation. Melnick also informed the court that the conversation was not friendly, that Levey Cohen told him he was making a “big mistake” and that he would “be sony if it’s not changed,” and that Levey Cohen hung up on him. Mel-nick said he felt that Levey Cohen’s tone implied a personal threat against him. He asserted that he was “directly and heavily involved in Pedro Dijols’ unsuccessful retention campaign and was directly involved in all the research involved with that litigation.” Melnick explained that he discloses his involvement in the Dijols campaign to each of his clients whenever he is slated to appear before Judge Cohen, and he then lets the clients decide whether they want to request a different judge. At the end of the hearing, Judge Cohen granted the motion to recuse.
Later that month, the Gibbs case was transferred back to Judge Cohen. At an initial hearing on August 22, 2009, the defendant, Stephen Gibbs, informed the Court that he was no longer being represented by Stephen Melnick. Judge Cohen asked Gibbs if Melnick had ever explained to him the basis of the conflict that resulted in the recusal. Gibbs responded that he understood the conflict involved “[sjomething about a campaign,” and expressed frustration that Melnick had not *931 informed him of the conflict until after he was retained. Judge Cohen responded, “I just want to make sure that you, when you sit here with me as a judge, you have no question with me as your judge or that I have anything against you whatsoever.” Gibbs replied, “No, not at all.” At the request of Gibbs’ new attorney, the court scheduled a hearing in the case for the following week.
On August 28, 2009, Melnick was slated to appear before Judge Cohen in the case of State v. Butler, Case No. 08-22581-CF-10A (Fla. 17th Jud. Cir.). Melnick again filed a motion to recuse Judge Cohen. The facts set forth in the Butler motion were identical to those in the recusal motions Melnick had previously filed, but included three additional paragraphs which stated:
16. The undersigned was also on August 6, 2009, called before the Honorable Dale Cohen who questioned the truthfulness and veracity of earlier recusal motions.
17. Judge Cohen conducted a hearing in which he called his Wife as,- a witness to challenge the credibility of the undersigned counsel.
18. This hearing was conducted in an effort to embarrass or intimidate the undersigned attorney who Judge Dale Cohen’s wife is aware is working for the election of a candidate being challenged by her.
Judge Cohen held an evidentiary hearing on the recusal motion and questioned defendant Butler, overruling the defense’s objections. In the course of the hearing, Judge Cohen advised Melnick that his actions could be perceived as forum shopping, which may subject him to disciplinary action by The Florida Bar. At the end of the hearing, Judge Cohen granted the recusal motion.[8]
B. JQC Investigation
On September 29, 2009, the JQC issued a Notice of Investigation to Judge Cohen based on allegations that he had violated several canons of the Code of Judicial Conduct. The notice cited the August 6 Gibbs hearing as the basis for the allegations. Specifically, the notice alleged that Judge Cohen held an evidentiary hearing in violation of rule 2.330(f), Florida Rules of Judicial Administration, which provides: “The judge against whom an initial motion to disqualify ... is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged.” The notice further alleged that Judge Cohen called his wife as a witness and that he personally questioned her during the hearing.
A hearing was held before the Investigative Panel of the JQC on November 6, 2009. At the JQC hearing, Judge Cohen explained that he held the evidentiary hearing in Gibbs because he wanted to clear up what he believed to be a misunderstanding between his wife and Melnick. He said that after his wife’s unsuccessful campaign in 2008, Melnick and several other attorneys began filing motions to recuse Judge Cohen on the grounds that they had supported one of Levey Cohen’s opponents in the election' While the other attorneys stopped filing recusal motions after several months, Melnick continued to do so.
Judge Cohen recalled that on the day of the Gibbs hearing, Melnick came to the *932 courtroom and handed the clerk three new motions to recuse. Judge Cohen asked Melnick to return later. Judge Cohen told the JQC panel that he believed the allegations in the motions were exaggerated. He thought that if Melnick heard from Levey Cohen, the misunderstanding would be cleared up. He further explained that he had known Melnick for many years and that he wanted to remain on friendly terms with him. Judge Cohen had lunch with his wife that afternoon. He told Le-vey Cohen that Melnick had filed a motion to recuse and asked if she could come by the courtroom after lunch. After the hearing, Judge Cohen was informed by the chief criminal administrative judge that he was not allowed to hold hearings on recu-sal motions. Judge Cohen called Melnick and apologized. Judge Cohen informed the JQC panel that based on what he was taught in judicial college, he believed that a hearing on a motion to recuse was appropriate under certain circumstances. However, Judge Cohen admitted that he made a mistake in holding the hearing and agreed that his actions violated Canons 2 and 3.
The Investigative Panel issued a second Notice of Investigation on December 1, 2009. The notice cited the August 28 evi-dentiary hearing in Butter and alleged that during that hearing, Judge Cohen personally interrogated the defendant concerning another motion to recuse filed by Melnick, ignoring objections based on attorney/client privilege. The notice said that during the hearing, Judge Cohen threatened to file a complaint against Melnick with The Florida Bar for forum shopping. The notice also cited the August 22 hearing in Gibbs, in which Judge Cohen asked the defendant about the contents of the prior motion to recuse. The notice faulted Judge Cohen for failing to disclose these hearings at his previous appearance before the panel.
Judge Cohen submitted a written response in lieu of appearing before the panel. Judge Cohen explained that although he granted the three motions to recuse filed by Melnick on the date of the initial hearing in Gibbs, the Gibbs case was later transferred back to him because the new judge determined that Melnick was not the attorney of record, and therefore that no conflict existed. Judge Cohen learned that Melnick was also not the attorney of record in the other two cases in which recusal was granted. Judge Cohen wrote that although he had known Melnick for many years and was friendly with him, Melnick also had a reputation in the courthouse for unethical behavior. Judge Cohen stated that as a judge he was known for sometimes ordering tough sentences, and he suspected that Melnick was engaging in forum shopping to obtain a more favorable judge. He also suspected that Melnick was not informing his clients about the contents of the recusal motions, but was merely telling them to sign an affidavit.
When Melnick filed a motion to recuse in Butter, Judge Cohen held a hearing to ensure that the defendant understood the contents of the affidavit he had sworn to. Butler appeared to have no knowledge of the facts set forth in the affidavit, leading Judge Cohen to conclude that Melnick had filed a fraudulent affidavit. Judge Cohen wrote that he did not threaten Melnick or ignore his objections, but did inform him that his actions could expose him to disciplinary action by The Florida Bar. Judge Cohen later discovered that a transcript of the hearing was unavailable because the court reporter’s equipment malfunctioned. Judge Cohen stated that he was planning to file a Bar complaint against Melnick, but refrained from doing so due to the absence of a transcript.
*933 With regard to the second hearing in Gibbs, Judge Cohen explained that the case was transferred back to him when it was determined that Melnick was not the attorney of record. Judge Cohen questioned the defendant to make certain that he did not have any fears that Judge Cohen could be fair and impartial. Judge Cohen also wanted to determine whether Gibbs was aware of the contents of the previous motion to recuse because he was concerned that Melnick had filed another fraudulent affidavit. When it became clear that Gibbs was familiar with facts in the affidavit, Judge Cohen discontinued questioning.
Judge Cohen again stated that at the time of these hearings, he believed that he was allowed to hold a hearing on a motion to recuse. He cited judicial college materials which strongly discouraged such hearings, but did not say they were forbidden. He stated that he did not discuss the Butler hearing or the second Gibbs hearing at his appearance before the JQC panel because the first notice of investigation only addressed the first Gibbs hearing. Judge Cohen did not believe it was proper to discuss his concerns regarding Mel-nick’s ethical behavior at that hearing, and he did not want to use Melnick’s behavior as an excuse for his own possible wrongdoing. He admitted erring in failing to have proper knowledge of the rule prohibiting him from holding an evidentiary hearing on a motion to recuse, but asserted that his error was in good faith.
C. Formal Charges
The Investigative Panel filed a Notice of Formal Charges on February 25, 2010, charging Judge Cohen with violating the Preamble to and Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7) and 3E(l)(d) of the Code of Judicial Conduct. The notice consisted of thirteen numbered paragraphs and alleged misconduct relating to the August 6 evi-dentiary hearing in Gibbs, the August 22 hearing in Gibbs, the August 28 hearing in Butler, and other alleged acts of wrongdoing committed by Judge Cohen in the course of the JQC investigation.
Paragraphs 1 and 2 of the notice described the circumstances surrounding the August 6 evidentiary hearing in Gibbs. The Investigative Panel alleged that Judge Cohen improperly engaged in ex parte communications with his wife about the recusal motion, held an evidentiary hearing, and called his wife as a witness. Paragraph 3 of the notice stated:
Your purpose in holding the hearing was to intimidate Mr. Melnick, and in doing so you used the courtroom and the power of your office to advance the interests of you and your wife. Your conduct was an abuse of your judicial power, an abuse of your office and was an improper use of your office for personal gain.
Paragraphs 4 through 7 described the August 28 evidentiary hearing in Butler. The notice alleged that Judge Cohen threatened Melnick by stating that he would file a complaint with The Florida Bar for forum shopping. The notice further alleged that the purpose of the hearing and the threat of a Bar complaint “was to embarrass and intimidate Mr. Melnick, and to use your courtroom and the power of your office advance the personal interests of you and your wife.” Paragraph 8 described Judge Cohen’s questioning in Gibbs on August 22 and alleged that “[t]he purpose of this questioning was to develop information you could use to embarrass and intimidate Mr. Melnick.”
Paragraphs 9 through 11 concerned misconduct allegedly committed by Judge Cohen in the course of the JQC investigation. Paragraph 9 alleged that in Judge Cohen’s written response to the JQC’s second No *934 tice of Investigation, Judge Cohen improperly sought to discredit Melnick by attacking his character. Paragraph 10 asserted that Judge Cohen’s wife clandestinely photographed Melnick in court and submitted those photos to the Investigative Panel. The Investigative Panel alleged that this action constituted “a continuation of your efforts to embarrass and intimidate Mr. Melnick and to advance your personal interests and those of your wife.” Paragraph 11 alleged that Judge Cohen improperly failed to disclose the August 28 evidentiary hearing in Butler at his November 6 appearance before the Investigative Panel.
Paragraph 12 of the notice concluded: Your continuing pattern of judicial misconduct indicates a disregard for the Code of Judicial Conduct and constitutes a pattern and practice unbecoming a judicial officer and lacking the dignity appropriate to judicial office, with the effect of bringing the judiciary into disrepute. The foregoing acts violate the Preamble to and Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7) and 3E(l)(d) of the Code of Judicial Conduct.
Finally, Paragraph 13 advised Judge Cohen that he could be subject to discipline if the allegations were found to be true and notified him of his right to respond.
D. Findings, Conclusions, and Recommendations
Proceedings were held before a Hearing Panel of the JQC on January 18 and 19, 2011. Fifteen witnesses were called to testify before the panel, including Judge Cohen, Mardi Levey Cohen, and Stephen Melnick. Other witnesses who were present at the hearings in Gibbs and Butler described their recollections of the proceedings. The Hearing Panel filed its Findings, Conclusions, and Recommendations with this Court on March 28, 2011. In its findings, the Hearing Panel determined that Judge Cohen was “not guilty” of the violations alleged in Paragraphs 9, 10, and 11 of the Notice of Formal Charges.[9] As to Paragraph 12, the panel likewise found Judge Cohen “not guilty” of engaging in a “pattern and practice” of misconduct.
As to Paragraphs 1 through 8, however, concerning the hearings in Gibbs and Butler, the Hearing Panel found Judge Cohen “[gjuilty as charged of violating Judicial Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7), and 3E(l)(d).” The Hearing Panel explained:
Attorney Melnick filed recusal motions against Judge Cohen based upon a dispute with the judge’s wife. The matters detailed in the motions, if believed, reflected negatively on Levey Cohen, who was seeking election in a third judicial campaign. It is only natural for a husband to rise to the defense of his wife. Here, however, Judge Cohen was not merely a husband, but a judge. Judge Cohen abandoned a role of neutrality, and used the judicial proceedings in Gibbs and Butler as a forum to vindicate his wife’s personal interests.
Judge Cohen violated Judicial Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7), and 3E(1). He had ex paite communications with his wife about the Melnick motions and held an evidentiary hearing in which he called his wife as a material witness. This was a proceeding in which his impartiality could certainly be questioned.
*935 Courtrooms are not forums for judges to work out personal issues or friendships with the lawyers appearing before them. Nor should they be used to vindicate a judge’s personal or professional interest.
The Hearing Panel rejected the Investigative Panel’s charge that Judge Cohen had violated the Preamble to the Code of Judicial Conduct, explaining that “[t]he Preamble is merely explanatory of the canons and was not violated.”
The Hearing Panel rejected Judge Cohen’s assertion that his actions were justified under Canon 3D(2). The canon provides: “A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.” Fla.Code of Jud. Conduct, Canon 3D(2). In rejecting the defense, the Hearing Panel explained:
“Appropriate action” is to address minor misconduct directly with the perceived offender, or to inform the Florida Bar if the judge had knowledge that a lawyer violated a Bar Rule that raises a substantial question as to the lawyer’s honesty, trustworthiness or fitness. Commentary, Canon 3D; See generally ABA Model Code, Rule 2.15, Comment 2. It does not include a personal investigation by the judge, during hearings set for other matters.
The Hearing Panel determined that in this case, the appropriate disciplinary action is a public reprimand. In its findings, the Hearing Panel compares this case to one in which a judge uses the prestige of office to intervene in a legal matter on behalf of the judge’s family or friends. See In re Maxwell, 994 So.2d 974 (Fla.2008) (ordering a public reprimand where a judge intervened with law enforcement to have the sister of his former law partner released from custody); In re Maloney, 916 So.2d 786 (Fla.2005) (ordering a public reprimand where a judge intervened with law enforcement to have the son of a friend released from custody). The Hearing Panel further recommends that this Court require Judge Cohen to pay the costs of the proceedings.
The Hearing Panel also noted the following mitigation. At the time of the hearings in Gibbs and Butler, Judge Cohen had been on the bench for only three-and-one-half years and had limited experience with recusal motions. Witnesses including court personnel, attorneys, and other judges described Judge Cohen as “a smart, fair, conscientious judge, who is well liked and respected in Broward County.” Judge Cohen also demonstrated remorse for his actions and suffered considerable embarrassment as a result of the JQC investigation. The Hearing Panel concluded that “the canon violations at issue here are fact specific, relate to one situation, and will not be repeated.”
II. ANALYSIS
This case presents three issues for our review. First, we will address Judge Cohen’s argument that the case against him must be dismissed because the Hearing Panel found him “not guilty” of engaging in a “pattern and practice of misconduct,” as alleged in Paragraph 12 of the Notice of Formal Charges. Secondly, we must address whether the Hearing Panel’s findings are supported by clear and convincing evidence. Finally, we must determine whether the disciplinary action of a public reprimand and payment of costs, as recommended by the Hearing Panel, is appropriate in this case.
A. Dismissal
Initially, Judge Cohen argues that the charges against him should be dismissed because the Hearing Panel found *936 him “[n]ot guilty of a ‘pattern and practice’ of wrongdoing.” Judge Cohen contends that the Notice of Formal Charges did not charge him with multiple “counts” of misconduct, but rather that, based on the language of Paragraph 12, the notice set forth numerous acts that constituted a single count of engaging in a “pattern and practice unbecoming a judicial officer....” Judge Cohen asserts that the acts for which he was found guilty were merely elements of that single count. He argues that because these acts were not alleged in the form of separate counts of misconduct, the Hearing Panel’s findings of guilt violate his right to due process.
This Court has explained that although judicial misconduct proceedings under article V, section 12 of the Florida Constitution are not criminal in nature, accused judicial officers are to be accorded both substantive and procedural due process of law. See In re Inquiry Concerning a Judge, 357 So.2d 172, 181 (Fla.1978). “The Commission’s own rules provide that if that body finds probable cause to proceed against a judge, the judge shall be notified of all charges that may result in removal or reprimand....” In re Davey, 645 So.2d 398, 406 (Fla.1994). When the JQC issues a Notice of Formal Charges against a judge, the notice must “specify in ordinary and concise language the charges against the judge and allege the essential facts upon which such charges are based.... ” Fla. Jud. Qual. Comm’n R. 6(g). The Court has explained the purpose of this rule as follows:
Formal charges permit the judge to prepare and present a defense, and this in turn gives the Commission an opportunity to evaluate evidence it might otherwise have overlooked in its quest for truth. More important, though, it gives this Court a chance to perform its constitutional duty by reviewing, evaluating, and weighing both sides of the issue.
Davey, 645 So.2d at 406.
In this case, the Notice of Formal Charges contained thirteen numbered paragraphs describing the misconduct allegedly committed by Judge Cohen. The introductory paragraph explains that the Investigative Panel has determined that probable cause exists to institute charges against Judge Cohen based on allegations that he violated the Preamble to and Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7) and 3E(l)(d) of the Code of Judicial Conduct. Paragraphs 1 through 11 of the notice describe the specific alleged acts of misconduct. Paragraph 12 alleges that Judge Cohen engaged in a “continuing pattern of judicial misconduct” that constitutes a “pattern and practice unbecoming a judicial officer.... ” Paragraph 12 concludes: “The foregoing acts violate the Preamble to and Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7) and 3E(l)(d) of the Code of Judicial Conduct.” Subsequently, in its Findings, Conclusions and Recommendations, the Hearing Panel addressed the numbered paragraphs individually, finding Judge Cohen “guilty” of some of the alleged acts and “not guilty” of others.
A review of the Notice of Formal Charges shows that all of the acts of misconduct for which the Hearing Panel issued findings of guilt were properly charged by the Investigative Panel. Although the notice charged Judge Cohen with committing a “pattern and practice” of wrongdoing, the conduct described in Paragraphs 1 through 11 was alleged in the form of multiple, separate-but-connected acts of misconduct in violation of the Preamble to and Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7) and 3E(l)(d) of the Code. Consistent with the Hearing Panel’s ultimate findings, the Investigative Panel set out the canons Judge Cohen was deter *937 mined to have violated and the conduct supporting those violations. Thus, the notice was consistent with Judge Cohen’s right to notice of the charges against him as described in rule 6(g), Florida Judicial Qualification Rules. See Davey, 645 So.2d at 406. We hold that Judge Cohen’s right to due process has not been violated and that dismissal is not required.
B. Clear and Convincing Evidence
Next, we must determine whether the Hearing Panel’s findings of fact are supported by clear and convincing evidence. Under article V, section 12(c)(1) of the Florida Constitution, this Court “may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission and it may order that the justice or judge be subjected to appropriate discipline.” In judicial misconduct cases,
This Court reviews the findings of the JQC to determine if they are supported by clear and convincing evidence and reviews the recommendation of discipline to determine whether it should be approved. “While this Court gives the findings and recommendations of the JQC great weight, ‘the ultimate power and responsibility in making a determination rests with this Court.’ ” In re Kinsey, 842 So.2d 77, 85 (Fla.2008) (footnote omitted) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)). Accordingly, we review the findings to ensure that there is “clear and convincing evidence” to support the alleged ethical violations — a standard of proof which has been described as “more than a ‘preponderance of the evidence,’ but the proof need not be ‘beyond and to the exclusion of a reasonable doubt.’ ” Id. (quoting In re Davey, 645 So.2d at 404).
In re Andrews, 875 So.2d 441, 442 (Fla.2004). Additionally, “a judge’s ‘own admissions’ of the misconduct and impropriety of that conduct ‘bolster the JQC’s findings ... '" In re Downey, 987 So.2d 643, 649 (Fla.2006) (quoting In re Angel, 867 So.2d 379, 383 (Fla.2004)). “In cases where a judge admits to wrongdoing and the JQC’s findings are undisputed this Court will ordinarily conclude that the JQC’s findings are supported by clear and convincing evidence.” In re Diaz, 908 So.2d 334, 337 (Fla.2005).
The JQC has determined that Judge Cohen’s actions violated Canon 1 and sections of Canons 2 and 3 of the Code of Judicial Conduct. Canon 1, entitled, “A Judge Shall Uphold the Integrity and Independence of the Judiciary,” requires judges to “participate in establishing, maintaining, and enforcing high standards of conduct,” and to “personally observe those standards so that the integrity and independence of the judiciary may be preserved.” The commentary to this canon explains that “[ajlthough judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility.” Fla. Code of Jud. Conduct, Canon 1 cmt.
As to Canon 2, entitled, “A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge’s Activities,” the JQC found that Judge Cohen’s actions violated sections A and B. Canon 2A requires judges to “respect and comply with the law and [to] act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” The commentary states that “[a] judge must avoid all impropriety and appearance of impropriety” and cautions that “[a] judge must expect to be the subject of constant public scrutiny.” Fla.Code of Jud. Conduct, Canon 2A cmt. Canon 2B provides: “A judge shall not allow family, *938 social, political or other relationships to influence the judge’s judicial conduct or judgment.”
As to Canon 3, entitled, “A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently,” the JQC found that Judge Cohen’s actions violated sections B and E. Canon 3B(1) states: “A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.” Canon 3B(2) states: “A judge shall be faithful to the law and maintain professional competence in it.” Canon 3B(7) prohibits judges from initiating, permitting, or considering ex parte communications, or from considering any other communications concerning a pending or impending proceeding made to the judge outside the presence of the parties. The commentary to Canon 3B(7) cautions that judges “must not independently investigate facts in a case and must consider only the evidence presented.” Fla.Code of Jud. Conduct, Canon 3B(7) cmt. Finally, Canon 3E provides that a judge “shall disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonably be questioned. ...” Disqualification is required in proceedings in which the judge’s spouse “is known by the judge to have a more than de minimus interest that could be substantially affected by the proceeding” or “is to the judge’s knowledge likely to be a material witness in the proceeding.” Fla.Code of Jud. Conduct, Canon 3E(l)(d)(iii)-(iv).
The pertinent facts surrounding the August 6, 2009, evidentiary hearing in Gibbs are not in dispute. Attorney Stephen Mel-nick filed a motion to recuse Judge Cohen based upon an alleged dispute with Judge Cohen’s wife. The rules governing an initial motion for disqualification are clear:
The judge against whom an initial motion to disqualify under subdivision (d)(1) is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. If any motion is legally insufficient, an order denying the motion shall immediately be entered. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion.
Rule 2.330(f), Fla. R. Jud. Admin, (emphasis added).[10]
Pursuant to rule 2.330(f), Judge Cohen was required to either grant the motion for disqualification or to deny it as legally insufficient. Judge Cohen testified before the Investigative Panel that he believed the allegations in the motion were exaggerated. During lunch, he asked his wife to come to the courtroom with the intent of calling her as a witness. When court resumed, Judge Cohen called his wife to the witness stand over counsel’s objections and questioned her regarding the facts set forth in the recusal motion. In doing so, Judge Cohen forced counsel to place his own credibility against the credibility of the judge’s wife. Judge Cohen acknowledged in his testimony that he violated the canons by allowing his wife to testify as a witness and in not following the law.
We agree that this conduct violates the canons cited by the JQC in the Notice of Formal Charges. In failing to rule on the motion in the manner required by rule 2.330(f), Judge Cohen failed to “respect and comply with the law,” in violation of *939 Canon 2A. Judge Cohen explained that he held the hearing in order to remain on friendly terms with Melnick and to resolve what he believed to be a misunderstanding between Melnick and his wife. Judge Cohen thus allowed his conduct on the bench to be influenced by social and family relationships, in violation of Canon 2B. Judge Cohen further engaged in an ex parte discussion of the case with his wife, in violation of Canon 3B(7),[11] presided over a proceeding in which disqualification was required, in violation of Canons 3B(1) and 3E,[12] and failed to remain faithful to the law, in violation of Canon 3B(2).
Finally, we agree that Judge Cohen failed to observe the high standards of conduct required by Canon 1. In his brief before this Court, Judge Cohen does not dispute the essential facts of the case, but does challenge the Hearing Panel’s conclusion that his purpose in holding the eviden-tiary hearing was to “embarrass and intimidate Melnick, and to prevent him from filing more recusal motions reflecting poorly on Levey Cohen, when she was engaged in another election campaign.” Regardless of his motivations, however, an observer of the hearing could certainly have reached the conclusion that Judge Cohen was seeking to use the power of his office to vindicate his wife against accusations by an attorney who had supported one of her opponents in a previous election. For the reasons provided in the commentary to Canon 1, such a hearing undermines the integrity and independence of the judiciary:
Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.
Fla.Code of Jud. Conduct, Canon 1 cmt.
Moreover, the very act of holding an evidentiary hearing created a hos *940 tile atmosphere for the litigating attorney. Rule 2.330(f) exists for the specific purpose of preventing this type of situation. As this Court has explained:
When a judge has looked beyond the mere legal sufficiency of a suggestion of prejudice and attempted to refute the charges of partiality, he has then exceeded the proper scope of his inquiry and on that basis alone established grounds for his disqualification. Our disqualification rule, which limits the trial judge to a bare determination of legal sufficiency, was expressly designed to prevent what occurred in this case — the creation of “an intolerable adversary atmosphere” between the trial judge and the litigant.
Bundy v. Rudd, 366 So.2d 440, 442 (Fla.1978) (quoting Dep’t of Revenue v. Golder, 322 So.2d 1, 7 (Fla.1975)).
Attorneys should not be placed in a position where they fear retaliation for filing a motion to disqualify. Not only was attorney Melnick placed in such a position, but he also was forced to place his own credibility against the credibility of the judge’s wife. A judge must avoid circumstances which give the appearance that the judge’s personal or familial interest is being pitted against an attorney or litigant. For this reason, among others, a judge may not preside over a proceeding in which his or her spouse is a material witness. See Fla.Code of Jud. Conduct, Canon 3E(l)(d)(iv). Failure to abide by this requirement may result in the creation of “an intolerable adversary atmosphere,” Bundy, 366 So.2d at 442 (quoting Golder, 322 So.2d at 7), and indeed, plainly did so in this case.
The hostile atmosphere was only furthered when Judge Cohen held an additional evidentiary hearing in Butler on August 22, 2009. Rather than grant the recusal motion or deny it as legally insufficient, as required by rule 2.330(f), Judge Cohen personally questioned the defendant concerning the contents of the motion and threatened to file a complaint with The Florida Bar against Melnick. Judge Cohen’s actions created the impression that he had a personal animus against Melnick and that he was using the authority of his office to pursue him. This impression would have been reinforced by Judge Cohen’s questioning of the defendant in Gibbs on August 28, 2009.
Judge Cohen argued before the JQC that he questioned the defendants in Gibbs and Butler because he believed Melnick had engaged in misconduct. Canon 3D(2) provides: “A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.” “Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency.” Fla. Code of Jud. Conduct, Canon 3D cmt. We agree with the Hearing Panel that “appropriate action” does not extend to conduct that constitutes a violation of the law or other canons. By holding evidentiary hearings on the motions to recuse in Gibbs and Butler, Judge Cohen violated the Code of Judicial Conduct.
C. Recommended Discipline
Having determined that the findings of the Hearing Panel are supported by clear and convincing evidence, the final issue for our review is whether to approve the JQC’s recommendation as to the appropriate discipline. See In re Diaz, 908 So.2d at 337. “While this Court gives the findings and recommendations of the JQC *941 great weight, ‘the ultimate power and responsibility in making a determination rests with this Court.’ ” In re Kinsey, 842 So.2d at 85 (footnote omitted) (quoting In re Davey, 645 So.2d at 404). Under the Florida Constitution,
The supreme court may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission and it may order that the justice or judge be subjected to appropriate discipline, or be removed from office with termination of compensation for willful or persistent failure to perform judicial duties or for other conduct unbecoming a member of the judiciary demonstrating a present unfitness to hold office, or be involuntarily retired for any permanent disability that seriously interferes with the performance of judicial duties.
Art. V, § 12(c)(1), Fla. Const. “[Discipline is defined as any or all of the following: reprimand, fine, suspension without pay, or lawyer discipline.” Art. V, § 12(a)(1). Additionally, “[t]he supreme court may award costs to the prevailing party.” Art. V, § 12(c)(2).
The JQC recommends that this Court issue a public reprimand and require Judge Cohen to pay the costs of the proceedings. We agree that these sanctions are appropriate. While the facts of this case are not directly comparable to any prior judicial misconduct case cited by the parties, this Court has previously found a public reprimand to be appropriate in cases where judges have failed to comply with the law or to act in a manner which promotes the confidence in the impartiality of the judiciary. See In re Eriksson, 36 So.3d 580, 596 (Fla.2010) (ordering a public reprimand and costs where the judge was found to have retaliated against the defendant for filing a motion to disqualify); In re Bell, 23 So.3d 81(Fla.2009) (ordering a public reprimand where the judge, in a domestic battery hearing concerning a husband with whom the judge was acquainted socially, ordered the arrest of the wife despite the absence of any complaint against her). As the Hearing Panel observed in its findings, this Court has also found a public reprimand to be appropriate in cases where a judge has intervened in legal matters on behalf of family or friends. See In re Maxwell, 994 So.2d at 977-78; In re Maloney, 916 So.2d at 788-89. We conclude that a public reprimand and payment of costs are appropriate under the circumstances of this case.
III. CONCLUSIONS
For the reasons discussed above, we approve the JQC’s finding that Judge Cohen violated the Code of Judicial Conduct. Furthermore, we agree with the JQC’s recommendation that Judge Cohen be publicly reprimanded and charged the costs of the proceedings. In accordance with the policy announced in In re Frank, 753 So.2d 1228, 1242 (Fla.2000), we hereby command Judge Dale C. Cohen to appear before this Court for the administration of a public reprimand at a time to be established by the Clerk of this Court.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY,
LABARGA, and PERRY, JJ., concur.

. Canon 1 is titled, "A Judge Shall Uphold the Integrity and Independence of the Judiciary.” The canon provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Fla.Code of Jud. Conduct, Canon 1.

. Canon 2 is titled, "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in all of the Judge’s Activities.” Subsection A provides: “A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Fla.Code of Jud. Conduct, Canon 2A.

. Subsection B of Canon 2 provides, in pertinent part:
A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge.
Fla.Code of Jud. Conduct, Canon 2B.

. Canon 3 is titled, "A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.” Subsection B is titled, "Adjudicative Responsibilities,” and provides, in pertinent part:
*929 (1) A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.
(2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
[[Image here]]
(7) ... A judge shall not initiate, permit, or consider ex parte communications, or other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding....
Fla.Code of Jud. Conduct, Canon 3B.

.Subsection E of Canon 3 is titled, "Disqualification.” The subsection provides that a judge “shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned....” Fla. Code of Jud. Conduct, Canon 3E(1). Proceedings requiring disqualification include those in which the judge’s spouse "is known by the judge to have a more than de minimus interest that could be substantially affected by the proceeding” or "is to the judge’s knowledge likely to be a material witness in the proceeding.” Fla.Code of Jud. Conduct, Canon 3E(l)(d)(iii)-(iv).

. See Levey v. Dijols, 990 So.2d 688 (Fla. 4th DCA), review denied, Dijols v. Levey, 994 So.2d 304 (Fla.2008).

. Levey Cohen was successful in that election and was subsequently sworn in as a county court judge on January 3, 2011.

. No transcript of the August 28, 2009, evi-dentiary hearing has been submitted to this Court. According to the parties’ stipulations, the absence of a transcript resulted from a mechanical failure in the court reporter’s equipment. During the subsequent JQC investigation, Judge Cohen submitted affidavits from two individuals who were present in the courtroom at the time of the hearing, describing their recollections of the proceeding.

. In its findings concerning Paragraph 10, the Hearing Panel explained that Judge Cohen was "[n]ot guilty of misleading the Investigative Panel,” but found that he was "[g]uilty of a misplaced personal attack on Mr. Melnick.”
However, the Hearing Panel did not state that Judge Cohen’s actions in this regard constituted a violation of the Code of Judicial Conduct.

. In contrast to the rules governing an initial motion for disqualification, a successor judge ruling on a successive motion for disqualification "may rule on the truth of the facts alleged in support of the motion.” Rule 2.330(g), Fla. R. Jud. Admin.

. Judge Cohen argues that the Hearing Panel erred in finding that he and his wife discussed the contents of Melnick’s recusal motion before the August 6, 2009, evidentiary hearing in Gibbs. In its Findings, Conclusions, and Recommendations, the Hearing Panel determined, “Assertions that the Co-hens had no discussion of Melnick’s recusal motions before the August 6, 2009, Gibbs re-cusal hearing strain credulity, particularly in light of the detailed questions and answers on this subject before the JQC Investigative Committee.” We agree. In his appearance before the Investigative Panel on November 6, 2009, Judge Cohen testified that he had previously informed Levey Cohen of Melnick’s re-cusal motions, and that she was aware the motions concerned an alleged phone conversation between herself and Melnick. Judge Cohen said that at lunch on August 6, he told Levey Cohen that Melnick had filed another such motion, that he asked her if she would come testify, and that Levey Cohen agreed to do so. Based on this testimony, we find the Hearing Panel's conclusion that Judge Cohen engaged in an ex parte conversation in violation of Canon 3B(7) to be supported by clear and convincing evidence.

. The legal sufficiency of the recusal motion filed in Gibbs is irrelevant to our conclusion that Judge Cohen violated Canons 3B(1) and 3E, and we do not express any view as to whether Judge Cohen was required to grant or deny the motion under rule 2.330(f). While it may have been permissible for Judge Cohen to deny the motion as legally insufficient, it was impermissible for Judge Cohen to preside over a hearing in which his wife was a material witness. See Fla.Code of Jud. Conduct, Canon 3E(l)(d)(iv).